# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                             Chapter 11

ROTHSTEIN ROSENFELDT ADLER, P.A.,        Case No.: 09-34791-BKC-RBR

      Debtor.

_____/

MICHAEL GOLDBERG, Liquidating Trustee,    Adv. Pro. No.: 14-01886-RBR

      Plaintiff,

v.

PLATINUM PARTNERS
VALUE ARBITRAGE FUND, L.P., *et al.*,

      Defendants.

_____/

## NOTICE OF FILING MOTION TO APPROVE SETTLEMENT AGREEMENT BY AND AMONG LIQUIDATING TRUSTEE AND ALL DEFENDANTS IN *GOLDBERG V. PLATINUM*, 14-1886-RBR

      Michael I. Goldberg Esq., in his capacity as Liquidating Trustee ("Liquidating Trustee") of the RRA Liquidating Trust ("RRA" or "RRA Trust") by and through undersigned counsel, files the attached *Motion To Approve Settlement Agreement By And Among Liquidating Trustee And All Defendants In Goldberg v. Platinum, 14-1886-RBR* (the "Motion") [Main Case ECF No. 5993], which was filed in the main case (Case No. 09-34791-BKC-RBR) on June 16, 2015.  The attached Motion is being filed in this adversary proceeding in accordance with Local Rule 9019-1.

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that true and correct copy of the foregoing was served via

CM/ECF upon all registered parties listed on the Electronic Mail Notice List on this 16th

day of June, 2015.

Dated: June 16, 2015                    Respectfully submitted,

                                                        BERGER SINGERMAN LLP
                                                        *Counsel for the Liquidating Trustee*
                                                        1450 Brickell Avenue, Suite 1900
                                                        Miami, FL 33131
                                                        Telephone: (305) 755-9500
                                                        Facsimile: (305) 714-4340

                                                        By:    /s/ Isaac M. Marcushamer
                                                        Paul Steven Singerman
                                                        Florida Bar No. 378860
                                                        singerman@bergersingerman.com
                                                        Isaac M. Marcushamer
                                                        Florida Bar No. 0060373
                                                        imarcushamer@bergersingerman.com

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- Scott L. Baena    sbaena@bilzin.com, eservice@bilzin.com;lflores@bilzin.com
- Thomas R. Lehman    trl@lklsg.com, esf@lklsg.com
- Corali Lopez-Castro    clc@kttlaw.com, rcp@kttlaw.com
- Isaac M Marcushamer    imarcushamer@bergersingerman.com, fsellers@bergersingerman.com;efile@bergersingerman.com;efile@ecf.inforuptcy.com
- James C. Moon    jmoon@melandrussin.com, ltannenbaum@melandrussin.com;mrbnefs@yahoo.com
- Audrey M Pumariega    apumariega@mwe.com, mjimenez@mwe.com,acrodriguez@mwe.com,Jkohlasch@mwe.com,dhayes@mcguirewoods.com,phayden@mcguirewoods.com,sfox@mcguirewoods.com,wtravis@mcguirewoods.com,cstewart@mcguirewoods.com
- David L Rosendorf    dlr@kttlaw.com, rcp@kttlaw.com;CWT@kttlaw.com;ycc@kttlaw.com
- Peter D. Russin    prussin@melandrussin.com, ltannenbaum@melandrussin.com;mrbnefs@yahoo.com
- Jay Sakalo    jsakalo@bilzin.com, eservice@bilzin.com;lflores@bilzin.com
- William G Salim Jr    wsalim@mmsslaw.com, cleibovitz@mmsslaw.com
- Paul Steven Singerman    singerman@bergersingerman.com, mdiaz@bergersingerman.com;efile@bergersingerman.com;efile@ecf.inforuptcy.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                          CASE NO.:  09-34791-RBR

ROTHSTEIN ROSENFELDT ADLER, P.A.,               CONFIRMED  CHAPTER 11

     Debtor.

_____/

### MOTION TO APPROVE SETTLEMENT AGREEMENT BY AND AMONG LIQUIDATING TRUSTEE AND ALL DEFENDANTS IN *GOLDBERG V. PLATINUM*, 14-1886-RBR

Michael I. Goldberg, Esq., in his capacity as Liquidating Trustee (the "**Liquidating Trustee**") for the RRA Liquidating Trust ("**RRA Trust**"), pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, files this motion (the "**Motion**") to approve a settlement agreement among the Liquidating Trustee, Michael I. Goldberg, Esq., in his capacity as Restitution Receiver (the "**Restitution Receiver**") and Platinum Partners Value Arbitrage Fund L.P. ("Platinum Value"), Platinum Partners Credit Opportunities Fund, L.P. ("**Platinum Credit**"), Centurion Structured Growth LLC ("**Centurion**" and collectively with Platinum Value and Platinum Credit, "**Platinum**") and Level 3 Capital Fund, L.P. ("**Level 3**" and collectively with Platinum, the "**Funds**"), TD Bank, N.A. ("**TD Bank**"), each of the Razorback Parties (as defined in the settlement agreement attached hereto as **Exhibit A** (the "**Settlement Agreement**"), Shimon Levy, Rachel Levy, Daniel Minkowitz ("**Minkowitz**"), Mordechai Bar–Adon ("**Bar-Adon**"), Ben Zion Varon ("**Zion Varon**"), Ovadia Levy, The 2009 Ovadia Levy Revocable Trust (the "**Levy Trust**"), Renato Watches, Inc. N/K/A DMOL, Inc. ("**Renato**"), Sea Club Ocean Resort Hotel, Inc. ("**Sea Club**"), and JUBOT, LLC ("**JUBOT**", and with Shimon Levy, Rachel Levy, Minkowitz, Bar-Adon, Zion Varon, Ovadia Levy, Levy Trust, Renato, and Sea Club, the "**Levy Parties**") and Gibraltar Private Bank & Trust ("**Gibraltar**," and together with the Liquidating

1

Trustee, the Restitution Receiver, the Funds, TD Bank, the Razorback Parties, and the Levy

Parties, collectively, the "**Parties**"), and in support thereof states as follows:[1]

## Background

1.      On November 10, 2009, an involuntary chapter 11 case was commenced against

Rothstein Rosenfeldt Adler, P.A. ("**RRA**") in the United States Bankruptcy Court for the Southern

District of Florida (the "**Bankruptcy Court**") styled as *In re Rothstein Rosenfeldt & Adler, P.A.*,

Case No. 09-34791-RBR (the "**Bankruptcy Case**").

2.      On November 20, 2009, the Bankruptcy Court entered an order directing the

appointment of a chapter 11 trustee.  On November 20, 2009, the Office of the United States

Trustee selected Herbert Stettin to serve as the chapter 11 trustee in the Bankruptcy Case (the

"**Chapter 11 Trustee**"), and on November 25, 2009, the Chapter 11 Trustee's appointment was

ratified by the Bankruptcy Court.

3.      On November 30, 2009, the Bankruptcy Court entered an order for relief in the

Bankruptcy Case

4.      In March 2012, TD Bank and the Razorback Parties in the action styled *Razorback*

*Funding, LLC et al. v. Rothstein, et al.*, Case No. 09-062943 (the "**Razorback State Court Suit**")

entered into that certain *Confidential Settlement Agreement and Mutual, General Release by and*

*between TD Bank, NA and Razorback Funding LLC, et al.*, [ECF No. 4184,[2] Composite Exh. A]

(the "**Razorback-TD Settlement Agreement**").  Pursuant to the Razorback-TD Settlement

Agreement, the Razorback Parties assigned to TD Bank a certain portion of certain distributions

---

[1]  Capitalized terms used but not defined herein shall have the meanings assigned to them in the Settlement
Agreement.  The description of the terms of the Settlement Agreement below is a summary of certain of the terms of
the Settlement Agreement. Parties in interest are encouraged to review the Settlement Agreement in its entirety.  The
Settlement Agreement shall govern in the event of any inconsistency between the descriptions contained in the
Motion and the Settlement Agreement.

[2]  The ECF references used herein refer to the electronic docket of the Bankruptcy Case.

6442239-3

the Razorback Parties may receive in certain bankruptcy cases, including the Bankruptcy Case (collectively, the "**Razorback Partial Assignment**").

5. On August 29, 2012, the Bankruptcy Court entered an order [ECF No. 3352] approving that certain settlement agreement by and among the RRA Trustee, the Funds, Regent Capital Partners, LLC and others (the "**Funds' Settlement Agreement**").

6. Pursuant to the Funds' Settlement Agreement, and subject to certain conditions therein, the Funds obtained against the RRA Estate a general unsecured claim in the amount of $28 million (the "**Funds' Class 3 Claim**") and a senior subordinated claim in the amount of $26 million (the "**Class 6 Claim**," collectively, the "**Funds' Related Claims**").

7. On October 10, 2012, the Bankruptcy Court approved that certain settlement agreement between and among certain of the Razorback Parties (the "**Razorback Claimants**")[3] and the RRA Trustee (the "**RRA-Razorback Settlement Agreement**") [ECF No. 3510].

8. Pursuant to the RRA-Razorback Settlement Agreement, the Razorback Claimants were allowed: (1) a general unsecured claim in the original aggregate amount of $250,000 (the "**Razorback GUC Claim**"); (2) the Razorback Unsecured Rising Tide Claim (as defined in the Plan (defined below)) that was in the original aggregate amount of $9,895,000 (which was originally eligible for a distribution in the aggregate maximum amount of $494,750) and is classified in Class 4 under the Plan; and (3) a subordinated unsecured claim (the "**Razorback Subordinated Claim**") that was allowed in the original aggregate amount of $30,093,125 and is

---

[3] The Razorback Claimants are Razorback Funding, LLC; D3 Capital Club, LLC; BFMC Investment, LLC; Linda Von Allmen, as Trustee of the Von Allmen Dynasty Trust; D&L Partners, LP; David Von Allmen, as Trustee of the David Von Allmen Living Trust; Ann Von Allmen, as Trustee of the Ann Von Allmen Living Trust; Dean Kretschmar; Cooper Management, LLC; Carmen Pavano, as Trustee of the Extra Inning Dynasty Trust; Adele Mussry; Jack Mussry; Nassim Mussry; Melina El-Ani; Danielle Izaac; H&N Associates; Aretz Associates; Park National Capital Funding, LLC; Park National Mortgage Servicing; Scott Morgan; Viceroy Global Investments, Inc.; Concorde Capital, Inc.; Florence Paley as administratrix of the Estate of Edward Paley; Florence Paley; the Edward and Florence Paley Foundation; Steven Paley; Laura Paley; Jane Zaretsky; Steven Zaretsky, as Trustee of The Jane Zaretsky Dynasty Trust; and Lawrence E. Dekelbaum.

3

classified in Class 7 under the Plan. In addition, in the TD-RRA-Levy Settlement Agreement (defined below) [ECF No. 5087], the Razorback Claimants were allowed (i) a substantial contribution administrative expense in the amount of $4,000,000; and (ii) an allowed general unsecured non-subordinated claim in the amount of $4,000,000 (collectively, the "**Additional Razorback Claims**"). The Razorback GUC Claim, Razorback Unsecured Rising Tide Claim, Razorback Subordinated Claim and the Additional Razorback Claims are referred to herein collectively as the "**Razorback Claims**."

9. Also on October 10, 2012, the Bankruptcy Court approved that certain settlement agreement between and among the RRA Trustee, Gibraltar and others (the "**Gibraltar Settlement Agreement**")[ECF No. 3500].

10. Pursuant to the Gibraltar Settlement Agreement, Gibraltar received, among other things, a subordinated unsecured claim against the RRA Estate that was ultimately allowed in the amount of $7,500,000 and is classified in Class 7 under the Plan (the "**Gibraltar Claim**").

11. On October 31, 2012, the Levy Parties, and the RRA Trustee entered into that certain settlement agreement (the "**First RRA-Levy Settlement**"), which provided for, among other things, a subordinated claim in favor of the Levy Parties [ECF No. 3631].

12. In 2013, the Razorback Parties filed an Amended Motion for Sanctions Against TD Bank, N.A. in the Broward County Circuit Court (the "**State Court**") in regard to the Razorback State Court Suit (the "**Sanctions Motion**").

13. On May 29, 2013, the RRA Trustee, the chapter 7 trustee of the Banyon estates and TD Bank entered into that certain Second Amended Settlement and General Release (as Modified) (as may have been further modified, amended and/or supplemented, the "**TD-RRA-Banyon Settlement Agreement**") [ECF No. 4517, Apx. 1.122]

14.     Also on May 29, 2013, the Chapter 11 Trustee filed the *Second Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code Proposed Jointly by the Trustee and the Official Committee of Unsecured Creditors (as Modified)* [ECF No. 4516] (the "**Plan**"), which was confirmed by the Bankruptcy Court's *Order Confirming Second Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code Proposed Jointly by the Trustee and the Official Committee of Unsecured Creditors (as Modified), Dated May 29, 2013 and Setting Bar Date for Lease and Contract Rejection Claims* [ECF No. 5063] (the "**Confirmation Order**")

15.     The Liquidating Trust was created and the appointment of the Liquidating Trustee was ratified pursuant to the Plan and Confirmation Order.  Pursuant to the Plan and Confirmation Order, and subject to the terms thereof, the Liquidating Trustee and the Liquidating Trust have succeeded to the interests of the Chapter 11 Trustee.

16.     The Plan contains certain provisions colloquially referred to as the "collateral source recovery" provisions, found principally, among other places, in Sections 6.13 and 6.14 of the Plan.

17.     On or about June 4, 2013, the Funds, TD Bank, Regent Capital Partners, LLC, George Levin, and Gayla Sue Levin entered into that certain Settlement Agreement and Mutual General Release (the "**TD-Funds Settlement Agreement**").  Pursuant to the TD-Funds Settlement Agreement, the Funds, among other things, assigned the Class 6 Claim to TD Bank and conveyed a 100% participatory interest in the Funds' Class 3 Claim in excess of $24,000,000 to TD Bank.

18.     On June 20, 2013, the Bankruptcy Court entered an Order approving a settlement between the Ira Sochet Inter Vivos Revocable Trust and Investors Risk Advantage, LP (collectively, the "**Sochet Entities**") and the RRA Trustee (the "**Sochet Settlement Agreement**")

[ECF No. 4600] pursuant to which, among other things, the Sochet Entities were allowed a $20,000,000 general unsecured claim against the RRA Estate (the "**Sochet Claim**"). The Sochet Settlement Agreement contained provisions for the assignment and remittance, in certain circumstances, of additional recoveries received by the Sochet Entities from third parties. On August 28, 2014, the Bankruptcy Court entered an Agreed Order (the "**Sochet Order**") [ECF No. 5757] addressing and resolving certain contested issues relating to the distributions on the Sochet Claim.

19.     On July 17, 2013, the Bankruptcy Court confirmed the Plan.  Pursuant to the Plan and the TD-RRA-Banyon Settlement Agreement, TD Bank received, among other things, a subordinated unsecured claim against the RRA Estate that was allowed in the amount of $132,450,000 and classified in Class 8 under the Plan (the "**Class 8 Claim**").

20.     On July 19, 2013, the Bankruptcy Court approved a Settlement Agreement between and among TD Bank, the RRA Trustee, the Levy Parties and others (the "**TD-RRA-Levy Settlement Agreement**") [ECF No. 5087].

21.     On December 9, 2014, the Bankruptcy Court approved that certain Settlement Agreement between and among the Liquidating Trustee and Shimon Levy and Rachel Levy (the "**Second RRA-Levy Settlement**" and with the First RRA-Levy Settlement, the "**RRA-Levy Settlement Agreements**")[ECF No. 5838]. Pursuant to the RRA-Levy Settlement Agreements, the Levy Claimants[4] hold an allowed Class 7 Claim under the Plan in the aggregate amount of $1,625,358.14 (the "**Levy Claim**").

22.     Also on December 9, 2014, the Liquidating Trustee filed a complaint (the "**Complaint**") seeking a declaratory judgment in the Bankruptcy Court, Adversary Proceeding No. 14-1886-RBR, against certain of the other Parties (the "**Adversary Proceeding**").   The

---

[4] The Levy Claimants are Minkowitz, Bar-Adon, Zion Varon, Ovadia Levy, Levy Trust, Renato, Sea Club, and Jubot.

Adversary Proceeding sought to have the Bankruptcy Court declare the extent to which distributions should be made on the Funds' Related Claims. Certain of the Parties disagree as to the applicability and extent of CSRs (defined below) to the Funds' Related Claims. Certain of the Parties disagree as to the applicability and extent of CSRs and Remittance Obligations (defined below) pertaining to the Razorback Subordinated Claim.

23.     In 2014, the State Court dismissed the Sanctions Motion. The Razorback Parties appealed the dismissal of the Sanctions Motion (the "**Sanctions Appeal**"). The Sanctions Appeal remains pending. TD Bank filed a motion to enforce the Razorback-TD Settlement Agreement seeking, among other things, the payment by the Razorback Parties of TD Bank's legal fees and expenses incurred in regard to the Sanctions Motion and the Sanctions Appeal (the "**TD Motion to Enforce**").

24.     On December 23, 2014, the Bankruptcy Court entered an Order Approving Settlement of Asserted Collateral Source Recoveries and Partial Assignments Regarding Razorback, Concorde and Viceroy Claims (the "**RRA-Razorback-Concorde-Viceroy Settlement**" [ECF No. 5848], and with the RRA-Razorback Settlement Agreement, the Funds' Settlement Agreement, the Gibraltar Settlement Agreement, the RRA-Levy Settlement Agreements, and the Sochet Settlement Agreement, the "**Creditor Settlement Agreements**"). Pursuant to the RRA-Razorback-Concorde-Viceroy Settlement, the aggregate maximum amount of distributions due on the Razorback Unsecured Rising Tide Claim was reduced to $443,201.20, and the aggregate amount of the Razorback Subordinated Claim was reduced by $175,000 to $29,918,125.

25.     Certain of the Parties contend that the Plan, the TD-RRA-Banyon Settlement Agreement and certain of the Creditor Settlement Agreements provide for the potential reduction

of the allowed amount of or distribution to be paid on account of certain allowed claims in the Bankruptcy Case due to the receipt of recoveries from sources other than the RRA Estate (the "**Recovery CSRs**"). Additionally, certain of the Parties contend that the Plan and the TD-RRA-Banyon Settlement Agreement provide that any amount due to TD Bank under the Razorback Partial Assignments would reduce the distribution to be paid on account of the Razorback Claims rather than be paid to TD Bank by the Razorback Claimants (the "**Partial Assignment CSRs**" and with the Recovery CSRs, the "**CSRs**").  Certain of the Parties also contend that the Plan further provides that if a creditor receives a distribution from the Liquidating Trustee and later recovers from a source other than the RRA Estate, the creditor must remit the amount of those later recovered amounts, up to the amount of the distribution that such creditor received from the Liquidating Trustee, to the Liquidating Trust (the "**Remittance Obligation**").

26.     On April 22, 2015, the Liquidating Trustee filed his motion to approve a certain settlement agreement between the Liquidating Trustee and Coquina Investments (the "**RRA-Coquina Escrow Settlement**") [ECF No. 5943].

27.     Provided that the funds allocated to the Restitution Receiver pursuant to the Forfeiture Settlement Order are disbursed before any further distributions are made from the Liquidating Trust, the Liquidating Trustee anticipates having sufficient funds available to pay in full all distributions through Class 7 that are contemplated by the Settlement Agreement.

28.     In the interest of avoiding costly and time consuming litigation regarding the Adversary Proceeding, the CSRs, Remittance Obligations, the Sanctions Motion, the Sanctions Appeal and the TD Motion to Enforce, the Parties have agreed to the terms of the Settlement Agreement (the "**Settlement**").

## Summary of the Settlement

29.    In considering the circumstances, and taking into account the nature of the disputes among the Parties and the associated risks, the Liquidating Trustee believes that the terms of the Settlement are reasonable.

a.   <u>Treatment of Claims</u>. Pursuant to the Settlement:

i.   <u>Treatment of the Funds' Class 3 Claim.</u> Within two (2) business days after the Funds Effective Date, the Liquidating Trustee shall make the full and final distribution on account of the Funds' Class 3 Claim by remitting the sum of $3,700,000 to the Funds and by remitting the sum of $4,000,000 to TD Bank. Upon the occurrence of the Funds Effective Date, the Funds' Class 3 Claim and the distributions on that claim shall not be subject to objection, reconsideration, reduction, recharacterization, subordination, impairment, disallowance, offset or reduction for any reason whatsoever, including without limitation, on account of a CSR Obligation. Upon the occurrence of the Funds Effective Date, no CSR Obligation that arises after May 1, 2015 shall apply in the RRA Case to the Funds.

ii.   <u>Treatment of the Razorback Unsecured Rising Tide Claim.</u> Within two (2) business days after the Settlement Effective Date and subsequent to the making of the payments provided in Paragraph 2 of the Settlement Agreement, the Liquidating Trustee shall make the full and final distribution on account of the Razorback Unsecured Rising Tide Claim by remitting the sum of $443,201.20 to the Razorback Claimants. The Razorback Unsecured Rising Tide Claim and the distributions on that claim shall not be subject to objection, reconsideration, reduction, recharacterization, subordination, impairment, disallowance, offset or reduction for any reason whatsoever, including without limitation, on account of a CSR Obligation. The Liquidating Trustee shall make all distributions on account of the Razorback Unsecured Rising Tide Claim to the account set forth on Schedule 1 attached to the Settlement Agreement for the benefit of the Razorback Claimants. Conrad & Scherer LLP shall, within ten (10) business days after the Settlement Execution Date, deliver to the Liquidating Trustee a completed W-9 form and any other documentation required by applicable law to receive the distribution on account of the Razorback Unsecured Rising Tide Claim.

iii.   <u>Treatment of the Class 6 Claim.</u> Within three (3) business days after the Settlement Effective Date and subsequent to the making of the payments provided in Paragraphs 2 and 3(a) of the Settlement Agreement, the Liquidating Trustee shall make the full and final distribution on account of the Class 6 Claim by remitting the sum of $26,000,000 to TD Bank. The

9

Class 6 Claim and the distributions on that claim shall not be subject to objection, reconsideration, reduction, recharacterization, subordination, impairment, disallowance, offset or reduction for any reason whatsoever, including without limitation, on account of a CSR Obligation.

iv. <u>Treatment of the Razorback Subordinated Claim</u>. Upon the Settlement Effective Date, the Razorback Subordinated Claim shall be an Allowed Claim (as defined under the Plan) in the aggregate amount of $22,418,125. The maximum distribution on account of the Razorback Subordinated Claim shall be $22,418,125. Within four (4) business days after the Settlement Effective Date and subsequent to the making of the payments provided in Paragraphs 2, 3(a) and 3(b) of the Settlement Agreement, the Liquidating Trustee shall make the full and final distribution on account of the Razorback Subordinated Claim by remitting the sum of $22,418,125 to the Razorback Claimants. The Razorback Subordinated Claim and the distributions on that claim shall not be subject to objection, reconsideration, reduction, recharacterization, subordination, impairment, disallowance, offset or reduction for any reason whatsoever, including without limitation, on account of a CSR Obligation. The Liquidating Trustee shall make all distributions on account of the Razorback Subordinated Claim to the account set forth on Schedule 1 attached to the Settlement Agreement for the benefit of the Razorback Claimants. Conrad & Scherer LLP shall, within ten (10) business days after the Settlement Execution Date, deliver to the Liquidating Trustee a completed W-9 form and any other documentation required by applicable law to receive the distribution on account of the Razorback Subordinated Claim.

v. <u>Treatment of the Gibraltar Claim.</u> The Gibraltar Claim shall be an Allowed Claim in the aggregate amount of $7,500,000. Within four (4) business days after the Settlement Effective Date and subsequent to the making of the payments provided in Paragraphs 2, 3(a) and 3(b) of the Settlement Agreement, the Liquidating Trustee shall make the full and final distribution on account of the Gibraltar Claim by remitting the sum of $7,500,000 to Gibraltar.

vi. <u>Treatment of the Levy Claim</u>. The Levy Claim shall be an Allowed Claim in the aggregate amount of $1,625,358.14. Within four (4) business days after the Settlement Effective Date and subsequent to the making of the payments provided in Paragraphs 2, 3(a) and 3(b) of the Settlement Agreement, the Liquidating Trustee shall make the full and final distribution on account of the Levy Claim by remitting the sum of $1,625,358.14 to the Levy Claimants. The Liquidating Trustee shall make all distributions on account of the Levy Claim to the account set forth on Schedule 2 attached to the Settlement Agreement for the benefit of the Levy Claimants. Moskowitz, Mandell, Salim & Simowitz, P.A. shall, within ten (10) business days after the Settlement Execution Date, deliver to the

10

Liquidating Trustee a completed W-9 form and any other documentation required by applicable law to receive the distribution on account of the Levy Claim.

b. <u>Stay and Dismissal of Actions</u>.

    i.   <u>Stay of Adversary Proceeding</u>. Within two (2) business days after the Settlement Execution Date, the Liquidating Trustee shall file a motion seeking to stay or to hold in abeyance the Adversary Proceeding, subject to the dismissal of the Funds pursuant to Paragraph 4(b)(i) of the Settlement Agreement, pending the Settlement Effective Date.

    ii.   <u>Dismissal of Adversary Proceeding</u>. (i) Upon the occurrence of the Funds Effective Date and the payment in full of the distributions set forth in Paragraph 2 of the Settlement Agreement, the Funds shall be deemed dismissed with prejudice from the Adversary Proceeding. (ii) Upon the occurrence of the Settlement Effective Date and the payment in full of the distributions set forth in Paragraphs 2, 3(a), 3(b), 3(c), 3(d) and 3(e) of the Settlement Agreement, the Adversary Proceeding shall be deemed dismissed with prejudice.

    iii.   <u>Stay of Sanctions Appeal</u>. Within two (2) business days after the Settlement Execution Date, the Razorback Parties and TD Bank shall file a joint motion seeking to stay or hold in abeyance the Sanctions Appeal pending the occurrence of the Settlement Effective Date.

    iv.   <u>Withdrawal and Dismissal of Sanctions Motion and Sanctions Appeal</u>. Within two (2) business days after the Settlement Effective Date, the Razorback Parties shall withdraw and dismiss, with prejudice, or shall file a motion seeking to withdraw and dismiss, with prejudice, the Sanctions Appeal. Within two (2) business days after the withdrawal and dismissal, with prejudice, of the Sanctions Appeal, the Razorback Parties and TD Bank shall jointly stipulate to or, if necessary, file a joint motion that seeks to (i) withdraw and dismiss, with prejudice, the Sanctions Motion, and (ii) withdraw and dismiss, with prejudice, the TD Motion to Enforce.

c. <u>Funds Related Mutual Releases</u>. Upon the first calendar day on which each of the

Funds Effective Date and the payment in full of the distributions provided for by

Paragraph 2 of the Settlement Agreement has occurred, TD Bank and the Liquidating

Trustee, without the need for the execution and delivery of additional documentation, shall

be deemed to have irrevocably and unconditionally, fully, finally and forever waived,

released, acquitted and discharged the Funds from any and all claims, actions, causes of action, liabilities, obligations, rights, suits, accounts, covenants, contracts, agreements, promises, damages, awards, recoveries, judgments, debts, encumbrances, liens, remedies and demands, of any and every kind, character or nature whatsoever, (including, without limitation, Unknown Claims), whether liquidated or unliquidated, asserted or unasserted, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, at equity or otherwise, which TD Bank or the Liquidating Trustee, or anyone claiming through them, may have or claim to have, now or in the future, against the Funds which are based upon, relate to, or arise out of, in connection with or pertain to any of (a)(i) the Adversary Proceeding, (ii) the Rothstein Ponzi, (iii) Scott W. Rothstein and any other co-conspirator or aider and abettor, and (iv) RRA, the RRA Estate, the RRA Trustee, the RRA Liquidating Trust and the Liquidating Trustee (collectively, the subjects referenced in Paragraph 7(a)(i) through Paragraph 7(a)(iv) of the Settlement Agreement are referred to as the "Implicated Matters and Entities"); (b) any act, fact, transaction, event, occurrence, statement or omission in connection with the Implicated Matters and Entities; and (c) anything alleged or that could have been alleged in the Adversary Proceeding, including, without limitation, any Unknown Claims. Additionally, upon the first calendar day on which each of the Funds Effective Date and the payment in full of the distributions provided for by Paragraph 2 of the Settlement Agreement has occurred, the Funds, without the need for the execution and delivery of additional documentation, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged each of the TD Bank Releasees and the Liquidating Trustee Releasees from any and all claims,

12

actions, causes of action, liabilities, obligations, rights, suits, accounts, covenants, contracts, agreements, promises, damages, awards, recoveries, judgments, debts, encumbrances, liens, remedies and demands, of any and every kind, character or nature whatsoever, (including, without limitation, Unknown Claims), whether liquidated or unliquidated, asserted or unasserted, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, at equity or otherwise, which the Funds or anyone claiming through any of them, may have or claim to have, now or in the future, against any of the TD Bank Releasees and the Liquidating Trustee Releasees, which are based upon, relate to, or arise out of, in connection with or pertain to any of (x) the Implicated Matters and Entities; (y) any act, fact, transaction, event, occurrence, statement or omission in connection with the Implicated Matters and Entities; and (z) anything alleged or that could have been alleged in the Adversary Proceeding, including, without limitation, any Unknown Claims.  Except as expressly set forth in the Settlement Agreement (including, without limitation, as set forth in Paragraphs 2 and 6 of the Settlement Agreement), the foregoing releases are not intended to release, nor shall any of them have the effect of releasing or modifying any of the obligations or rights arising pursuant to the Settlement Agreement, the Plan, and any other written agreements between or among any of the Parties to the Settlement Agreement and any orders approving or establishing such agreements, including without limitation, the TD-RRA-Banyon Settlement Agreement, the TD-Funds Settlement Agreement, the TD-RRA-Levy Settlement Agreement, the Creditor Settlement Agreements, the Razorback-TD Settlement Agreement, or the Sochet Order.

30. Mutual Releases. Upon the first calendar day on which each of the Settlement Effective Date, the payment in full of the distributions provided for by Paragraphs 2, 3(a), 3(b), 3(c), 3(d) and 3(e) of the Settlement Agreement, and the dismissal of the Sanctions Motion and the Sanctions Appeal with prejudice pursuant to Paragraph 4(d) of the Settlement Agreement has occurred, TD Bank and the Liquidating Trustee, without the need for the execution and delivery of additional documentation, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged each of the Razorback Parties, Gibraltar and the Levy Parties from any and all claims, actions, causes of action, liabilities, obligations, rights, suits, accounts, covenants, contracts, agreements, promises, damages, awards, recoveries, judgments, debts, encumbrances, liens, remedies and demands, of any and every kind, character or nature whatsoever, (including, without limitation, Unknown Claims), whether liquidated or unliquidated, asserted or unasserted, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, at equity or otherwise, which TD Bank or the Liquidating Trustee, or anyone claiming through them, may have or claim to have, now or in the future, against any of the Razorback Parties, Gibraltar and the Levy Parties, which are based upon, relate to, or arise out of, in connection with or pertain to any of (a) the Implicated Matters and Entities; (b) any act, fact, transaction, event, occurrence, statement or omission in connection with the Implicated Matters and Entities; (c) with respect to TD Bank only, the Sanctions Motion and the Sanctions Appeal; and (d) anything alleged or that could have been alleged in the Adversary Proceeding, including, without limitation, any Unknown Claims. Additionally, upon the first calendar day on which each of the Settlement Effective Date and the payment in full of the distributions provided for by Paragraphs 2, 3(a), 3(b), 3(c), 3(d) and 3(e) of the Settlement Agreement has occurred, each of the Razorback Parties, Gibraltar and the

14

Levy Parties, without the need for the execution and delivery of additional documentation, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged each of the TD Bank Releasees and the Liquidating Trustee Releasees from any and all claims, actions, causes of action, liabilities, obligations, rights, suits, accounts, covenants, contracts, agreements, promises, damages, awards, recoveries, judgments, debts, encumbrances, liens, remedies and demands, of any and every kind, character or nature whatsoever, (including, without limitation, Unknown Claims), whether liquidated or unliquidated, asserted or unasserted, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, at equity or otherwise, which any of the Razorback Parties, Gibraltar and the Levy Parties, or anyone claiming through any of them, may have or claim to have, now or in the future, against any of the TD Bank Releasees and the Liquidating Trustee Releasees, which are based upon, relate to, or arise out of, in connection with or pertain to any of (w) the Implicated Matters and Entities; (x) any act, fact, transaction, event, occurrence, statement or omission in connection with the Implicated Matters and Entities; (y) the Sanctions Motion and the Sanctions Appeal, and (z) anything alleged or that could have been alleged in the Adversary Proceeding, including, without limitation, any Unknown Claims. For the avoidance of doubt, the foregoing releases by each of the Razorback Parties include, but are not limited to, a release of the TD Bank Releasees by each of the Razorback Parties of any and all actions, causes of action, liabilities, obligations, rights, suits, accounts, covenants, contracts, agreements, promises, damages, awards, recoveries, judgments, debts, encumbrances, liens, remedies and demands, of any and every kind, character or nature whatsoever, (including, without limitation, Unknown Claims) that were or could have been alleged by any of the Razorback Parties in, or which are based upon, relate to, or arise out of, in connection with or pertain to the

15

Razorback State Court Suit, the Sanctions Motion, and/or the Sanctions Appeal. Except as expressly set forth in the Settlement Agreement (including, without limitation, as set forth in Paragraphs 2 and 3(f) of the Settlement Agreement), the foregoing releases are not intended to release, nor shall any of them have the effect of releasing or modifying any of the obligations or rights arising pursuant to the Settlement Agreement, the Plan, and any other written agreements between or among any of the Parties to the Settlement Agreement and any orders approving or establishing such agreements, including without limitation, the TD-RRA-Banyon Settlement Agreement, the TD-Funds Settlement Agreement, the TD-RRA-Levy Settlement Agreement, the Creditor Settlement Agreements, the Razorback-TD Settlement Agreement, or the Sochet Order.

## Authority to Support Authorization of the Settlement

31. The Liquidating Trustee seeks approval of the Settlement Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

32. Rule 9019(a) provides that, after notice and a hearing, a court may approve a proposed settlement. The decision of whether or not to approve a compromise is within the sound discretion of the court. *In re Chira*, 367 B.R. 888, 896 (S.D. Fla. 2007) *aff'd.* 567 F.3d 1307 (11th Cir. 2010) citing *In re Air Safety Intern., L. C.*, 336 B.R. 843, 852 (S.D. Fla. 2005); *In re Arrow Air, Inc.*, 85 B.R. 886 (Bankr. S.D. Fla. 1988).

33. In passing on proposed settlements, the Court must determine whether a proposed settlement is fair and equitable. *In re Chira*, 367 B.R. at 896 (S.D. Fla. 2007). The Court must evaluate whether the compromise falls below the "lowest point in the range of reasonableness." *In re S&I Investments*, 421 B.R. 569, 583 (Bankr. S.D. Fla. 2009) citing *In re Bicoastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993); *see also In re Arrow Air, Inc.*, 85 B.R. at 886 (Bankr. S.D. Fla. 1988).

34.     The 11th Circuit, in *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990), provided additional guidance regarding whether a settlement should be approved and established a four-part test:

>    a.   The probability of success in litigation;
>
>    b.   The difficulties, if any, to be encountered in the matter of collection;
>
>    c.   The complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and
>
>    d.   The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

35.     The Liquidating Trustee submits that the proposed Settlement satisfies the *Justice Oaks* standard.

36.     The Settlement is fair and equitable to the RRA Trust in that, without limitation, the Settlement amicably resolves among the Parties the Adversary Proceeding and the various CSR related issues among them as and to the extent provided in the Settlement Agreement.

37.     Unique to this Settlement, each remaining stakeholder in Classes 4-8 has signed the Settlement Agreement. Moreover, there is no impact to any of the claimholders in Classes 2 or 3, as the holders of allowed claims in those Classes have already been or will be paid in full.

38.     Without the Settlement, it is also anticipated that the litigation in the Adversary Proceeding would likely be expensive and time-consuming. Additionally, it is anticipated that any ruling of this Court would likely be appealed and that appellate remedies would likely be exhausted by the Parties before there would be finality to this Court's rulings regarding the matters settled by the Parties.

17

39.     The Liquidating Trustee believes that the expense, inconvenience and delay that would be caused by further litigation occurring in the Adversary Proceeding would not be in the best interest of the RRA Trust.

40.     Therefore, after full and careful consideration, the Liquidating Trustee believes that the resolution set forth in the Settlement Agreement is in the best interest of the RRA Trust and its beneficiaries.

**WHEREFORE,** the Liquidating Trustee respectfully request the entry of an order in substantially the same form of the order attached as **Exhibit B**, (i) granting this Motion, (ii) approving the terms of the Settlement Agreement, and (iii) granting such other relief as is just and proper.

Dated: June 16, 2015                              Respectfully submitted,

**BERGER SINGERMAN LLP**
Attorneys for Liquidating Trustee
1450 Brickell Avenue, Suite 1900
Miami, Florida 33131
Tel.: (305) 755-9500
Fax: (305) 714-4340

By:   _/s/ Paul Steven Singerman_
         Paul Steven Singerman
         Florida Bar No. 378860
         singerman@bergersingerman.com
         Isaac M. Marcushamer
         Florida Bar No. 60373
         imarcushamer@bergersingerman.com

18

6442239-3

## CERTIFICATE OF SERVICE

**I CERTIFY** that a true and correct copy of the foregoing was served via CM/ECF upon all parties and counsel of record registered to receive CM/ECF electronic notifications from the Bankruptcy Court in this case on this 16th day of June, 2015.

By: */s/ Paul Steven Singerman*
Paul Steven Singerman

6442239-3

**EXHIBIT A**
**[SETTLEMENT AGREEMENT]**

*Execution Version*

# SETTLEMENT AGREEMENT

**THIS Settlement Agreement** (the "**Agreement**") is dated as of June 16, 2015 (the "**Settlement Execution Date**," which shall be the first date on which counsel to each of the Parties has executed and delivered this Agreement) and is by and among Michael I. Goldberg, in his capacity as Liquidating Trustee (the "**Liquidating Trustee**") of the RRA Liquidating Trust being administered before the United States Bankruptcy Court for the Southern District of Florida (the "**Bankruptcy Court**") and in his capacity as **Restitution Receiver** (as defined in the Forfeiture Settlement Order (defined below)), Platinum Partners Value Arbitrage Fund L.P. ("**Platinum Value**"), Platinum Partners Credit Opportunities Fund, L.P. ("**Platinum Credit**"), Centurion Structured Growth LLC ("**Centurion**" and collectively with Platinum Value and Platinum Credit, "**Platinum**") and Level 3 Capital Fund, L.P. ("**Level 3**" and collectively with Platinum, the "**Funds**"), TD Bank, N.A. ("**TD Bank**"), each of the Razorback Parties (each of whom is listed on Exhibit A, and are collectively, the "**Razorback Parties**"), **Shimon Levy**, **Rachel Levy**, Daniel Minkowitz ("**Minkowitz**"), Mordechai Bar–Adon ("**Bar-Adon**"), Ben Zion Varon ("**Zion Varon**"), **Ovadia Levy**, The 2009 Ovadia Levy Revocable Trust (the "**Levy Trust**"), Renato Watches, Inc. N/K/A DMOL, Inc. ("**Renato**"), Sea Club Ocean Resort Hotel, Inc. ("**Sea Club**"), and JUBOT, LLC ("**JUBOT**", and with Shimon Levy, Rachel Levy, Minkowitz, Bar-Adon, Zion Varon, Ovadia Levy, Levy Trust, Renato, and Sea Club, the "**Levy Parties**") and Gibraltar Private Bank & Trust ("**Gibraltar**," and together with the Liquidating Trustee, the Restitution Receiver, the Funds, TD Bank, the Razorback Parties, and the Levy Parties, collectively the "**Parties**").

# RECITALS

A.      In 2005, Scott W. Rothstein ("**Rothstein**"), the 50% shareholder of Rothstein Rosenfeldt Adler, P.A. ("**RRA**"), began perpetrating a Ponzi scheme through the sale of fictitious structured settlements with non-existent clients of RRA (the "**Rothstein Ponzi**").

B.      On November 10, 2009, certain creditors of RRA filed an involuntary bankruptcy petition which created the RRA bankruptcy estate (the "**RRA Estate**").  RRA's bankruptcy case was assigned case number 09-34791-RBR (the "**RRA Case**").

C.      On November 20, 2009, the Office of the United States Trustee selected Herbert Stettin (the "**RRA Trustee**") as the chapter 11 trustee in the RRA Case.

D.      In March 2012, TD Bank and the Razorback Parties in the action styled *Razorback Funding, LLC et al. v. Rothstein, et al.*, Case No. 09-062943 (the "**Razorback State Court Suit**") entered into that certain *Confidential Settlement Agreement and Mutual, General Release by and between TD Bank, NA and Razorback Funding LLC, et al.*, [ECF No. 4184, Composite Exh. A] (the "**Razorback-TD Settlement Agreement**").[1]  Pursuant to the Razorback-TD Settlement Agreement, the Razorback Parties assigned to TD Bank a certain portion of certain distributions the Razorback Parties may receive in certain bankruptcy cases, including the RRA Case (collectively, the "**Razorback Partial Assignment**").

---

[1] The ECF references used herein refer to the electronic docket of the RRA Case.

E.     On August 29, 2012, the Bankruptcy Court entered an order [ECF No. 3352] approving that certain settlement agreement by and among the RRA Trustee, the Funds, Regent Capital Partners, LLC and others (the "**Funds' Settlement Agreement**").

F.     Pursuant to the Funds' Settlement Agreement, and subject to certain conditions therein, the Funds obtained against the RRA Estate a general unsecured claim in the amount of $28 million (the "**Funds' Class 3 Claim**") and a senior subordinated claim in the amount of $26 million (the "**Class 6 Claim**," collectively, the "**Funds' Related Claims**").

G.     On October 10, 2012, the Bankruptcy Court approved that certain settlement agreement between and among certain of the Razorback Parties (the "**Razorback Claimants**")[2] and the RRA Trustee (the "**RRA-Razorback Settlement Agreement**") [ECF No. 3510].

H.     Pursuant to the RRA-Razorback Settlement Agreement, the Razorback Claimants were allowed: (1) a general unsecured claim in the original aggregate amount of $250,000 (the "**Razorback GUC Claim**"); (2) the Razorback Unsecured Rising Tide Claim (as defined in the Plan (defined below)) that was in the original aggregate amount of $9,895,000 (which was originally eligible for a distribution in the aggregate maximum amount of $494,750) and is classified in Class 4 under the Plan; and (3) a subordinated unsecured claim (the "**Razorback Subordinated Claim**") that was allowed in the original aggregate amount of $30,093,125 and is classified in Class 7 under the Plan.  In addition, in the TD-RRA-Levy Settlement Agreement (defined below) [ECF No. 5087], the Razorback Claimants were allowed (i) a substantial contribution administrative expense in the amount of $4,000,000; and (ii) an allowed general unsecured non-subordinated claim in the amount of $4,000,000 (collectively, the "**Additional Razorback Claims**"). The Razorback GUC Claim, Razorback Unsecured Rising Tide Claim, Razorback Subordinated Claim and the Additional Razorback Claims are referred to herein collectively as the "**Razorback Claims**."

I.     Also on October 10, 2012, the Bankruptcy Court approved that certain settlement agreement between and among the RRA Trustee, Gibraltar and others (the "**Gibraltar Settlement Agreement**")[ECF No. 3500].

J.     Pursuant to the Gibraltar Settlement Agreement, Gibraltar received, among other things, a subordinated unsecured claim against the RRA Estate that was ultimately allowed in the amount of $7,500,000 and is classified in Class 7 under the Plan (the "**Gibraltar Claim**").

K.     On October 31, 2012, the Levy Parties and the RRA Trustee entered into that certain settlement agreement (the "**First RRA-Levy Settlement**"), which provided for, among other things, a subordinated claim in favor of the Levy Parties [ECF No. 3631].

---

[2] The Razorback Claimants are Razorback Funding, LLC; D3 Capital Club, LLC; BFMC Investment, LLC; Linda Von Allmen, as Trustee of the Von Allmen Dynasty Trust; D&L Partners, LP; David Von Allmen, as Trustee of the David Von Allmen Living Trust; Ann Von Allmen, as Trustee of the Ann Von Allmen Living Trust; Dean Kretschmar; Cooper Management, LLC; Carmen Pavano, as Trustee of the Extra Inning Dynasty Trust; Adele Mussry; Jack Mussry; Nassim Mussry; Melina El-Ani; Danielle Izaac; H&N Associates; Aretz Associates; Park National Capital Funding, LLC; Park National Mortgage Servicing; Scott Morgan; Viceroy Global Investments, Inc.; Concorde Capital, Inc.; Florence Paley as administratrix of the Estate of Edward Paley; Florence Paley; the Edward and Florence Paley Foundation; Steven Paley; Laura Paley; Jane Zaretsky; Steven Zaretsky, as Trustee of The Jane Zaretsky Dynasty Trust; and Lawrence E. Dekelbaum.

L.      In 2013, the Razorback Parties filed an Amended Motion for Sanctions Against TD Bank, N.A. in the Broward County Circuit Court (the "**State Court**") in regard to the Razorback State Court Suit (the "**Sanctions Motion**").

M.      On May 29, 2013, the RRA Trustee, the chapter 7 trustee of the Banyon estates and TD Bank entered into that certain Second Amended Settlement and General Release (as Modified) (as may have been further modified, amended and/or supplemented, the "**TD-RRA-Banyon Settlement Agreement**") [ECF No. 4517, Apx. 1.122].

N.      On May 30, 2013, the RRA Trustee and the Official Committee of Unsecured Creditors in the RRA Case filed the Second Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code Proposed Jointly by the Trustee and the Official Committee of Unsecured Creditors (As Modified) in the RRA Case (as may be further modified, amended and/or supplemented, the "**Plan**") [ECF No. 4517].

O.      On or about June 4, 2013, the Funds, TD Bank, Regent Capital Partners, LLC, George Levin, and Gayla Sue Levin entered into that certain Settlement Agreement and Mutual General Release (the "**TD-Funds Settlement Agreement**"). Pursuant to the TD-Funds Settlement Agreement, the Funds, among other things, assigned the Class 6 Claim to TD Bank and conveyed a 100% participatory interest in distributions on the Funds' Class 3 Claim in excess of $24,000,000 to TD Bank.

P.      On June 20, 2013, the Bankruptcy Court entered an Order approving a settlement between the Ira Sochet Inter Vivos Revocable Trust and Investors Risk Advantage, LP (collectively, the "**Sochet Entities**") and the RRA Trustee (the "**Sochet Settlement Agreement**") [ECF No. 4600] pursuant to which, among other things, the Sochet Entities were allowed a $20,000,000 general unsecured claim against the RRA Estate (the "**Sochet Claim**"). The Sochet Settlement Agreement contained provisions for the assignment and remittance, in certain circumstances, of additional recoveries received by the Sochet Entities from third parties. On August 28, 2014, the Bankruptcy Court entered an Agreed Order (the "**Sochet Order**") [ECF No. 5757] addressing and resolving certain contested issues relating to the distributions on the Sochet Claim.

Q.      On July 17, 2013, the Bankruptcy Court confirmed the Plan. The Plan created the RRA Liquidating Trust and provided for the ratification of the appointment of the Liquidating Trustee to administer the RRA Liquidating Trust. Pursuant to the Plan and the TD-RRA-Banyon Settlement Agreement, TD Bank received, among other things, a subordinated unsecured claim against the RRA Estate that was allowed in the amount of $132,450,000 and classified in Class 8 under the Plan (the "**Class 8 Claim**").

R.      On July 19, 2013, the Bankruptcy Court approved a Settlement Agreement between and among TD Bank, the RRA Trustee, the Levy Parties and others (the "**TD-RRA-Levy Settlement Agreement**") [ECF No. 5087].

S.      On December 9, 2014, the Bankruptcy Court approved that certain Settlement Agreement between and among the Liquidating Trustee and Shimon Levy and Rachel Levy (the "**Second RRA-Levy Settlement**" and with the First RRA-Levy Settlement, the "**RRA-Levy**

3

Settlement Agreements")[ECF No. 5838]. Pursuant to the RRA-Levy Settlement Agreements, the Levy Claimants[3] hold an allowed Class 7 Claim under the Plan in the aggregate amount of $1,625,358.14 (the "**Levy Claim**").

T.      Also on December 9, 2014, the Liquidating Trustee filed a declaratory judgment action in the Bankruptcy Court, Adversary Proceeding No. 14-1886-RBR, against certain of the other Parties (the "**Adversary Proceeding**").  The Adversary Proceeding sought to have the Bankruptcy Court declare the extent to which distributions should be made on the Funds' Related Claims.  Certain of the Parties disagree as to the applicability and extent of CSRs (defined below) to the Funds' Related Claims.  Certain of the Parties disagree as to the applicability and extent of CSRs and Remittance Obligations (defined below) pertaining to the Razorback Subordinated Claim.

U.      In 2014, the State Court dismissed the Sanctions Motion.  The Razorback Parties appealed the dismissal of the Sanctions Motion (the "**Sanctions Appeal**").  The Sanctions Appeal remains pending.  TD Bank filed a motion to enforce the Razorback-TD Settlement Agreement seeking, among other things, the payment by the Razorback Parties of TD Bank's legal fees and expenses incurred in regard to the Sanctions Motion and the Sanctions Appeal (the "**TD Motion to Enforce**").

V.      On December 23, 2014, the Bankruptcy Court entered an Order Approving Settlement of Asserted Collateral Source Recoveries and Partial Assignments Regarding Razorback, Concorde and Viceroy Claims (the "**RRA-Razorback-Concorde-Viceroy Settlement**" [ECF No. 5848], and with the RRA-Razorback Settlement Agreement, the Funds' Settlement Agreement, the Gibraltar Settlement Agreement, the RRA-Levy Settlement Agreements, and the Sochet Settlement Agreement, the "**Creditor Settlement Agreements**"). Pursuant to the RRA-Razorback-Concorde-Viceroy Settlement, the aggregate maximum amount of distributions due on the Razorback Unsecured Rising Tide Claim was reduced to $443,201.20, and the aggregate amount of the Razorback Subordinated Claim was reduced by $175,000 to $29,918,125.

W.      Certain of the Parties contend that the Plan, the TD-RRA-Banyon Settlement Agreement and certain of the Creditor Settlement Agreements provide for the potential reduction of the allowed amount of or distribution to be paid on account of certain allowed claims in the RRA Case due to the receipt of recoveries from sources other than the RRA Estate (the "**Recovery CSRs**"). Additionally, certain of the Parties contend that the Plan and the TD-RRA-Banyon Settlement Agreement provide that any amount due to TD Bank under the Razorback Partial Assignments should reduce the distribution to be paid on account of the Razorback Claims rather than be paid to TD Bank by the Razorback Claimants (the "**Partial Assignment CSRs**" and with the Recovery CSRs, the "**CSRs**").  Certain of the Parties also contend that the Plan further provides that if a creditor receives a distribution from the Liquidating Trustee and later recovers from a source other than the RRA Estate, the creditor must remit the amount of those later recovered amounts, up to the amount of the distribution that such creditor received from the Liquidating Trustee, to the Liquidating Trust (the "**Remittance Obligation**").

---

[3] The Levy Claimants are Minkowitz, Bar-Adon, Zion Varon, Ovadia Levy, Levy Trust, Renato, Sea Club, and Jubot.

X.     On April 22, 2015, the Liquidating Trustee filed his motion to approve a certain settlement agreement between the Liquidating Trustee and Coquina Investments (the "**RRA-Coquina Escrow Settlement**") [ECF No. 5943]. The Coquina Approval Order (defined below) was entered by the Bankruptcy Court on June 9, 2015 [ECF No. 5983].

Y.     Provided that the funds allocated to the Restitution Receiver pursuant to the Forfeiture Settlement Order (as defined below) are disbursed before any further distributions are made from the Liquidating Trust, the Liquidating Trustee anticipates having sufficient funds available to pay in full all distributions through Class 7 that are contemplated by this Agreement.

Z.     In the interest of avoiding costly and time consuming litigation regarding the Adversary Proceeding, the CSRs, Remittance Obligations, the Sanctions Motion, the Sanctions Appeal and the TD Motion to Enforce, the Parties have agreed to the terms of this Agreement.

**NOW, THEREFORE, IT IS HEREBY AGREED,** by and among the undersigned Parties as follows:

1.     Recitals, Interpretation and Certain Definitions.

    a.     Recitals.  The recitals set forth above are an integral part of this Agreement and are incorporated herein by reference and are explicitly made a part of this Agreement.

    b.     Interpretation.  As used in this Agreement, any reference to any federal, state, local, or foreign law, including any applicable law, will be deemed also to refer to such law as amended and all rules and regulations promulgated thereunder, unless the context requires otherwise.  The words "*include*", "*includes*", and "*including*" will be deemed to be followed by "*without limitation*".  Pronouns in masculine, feminine, or neutral genders will be construed to include any other gender, and words in the singular form will be construed to include the plural and vice versa, unless the context otherwise requires.  The words "*this Agreement*", "*herein*", "*hereof*", "*hereby*", "*hereunder*", and words of similar import refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited.

    c.     Certain Defined Terms.

        (i)     "*Approval Order*" shall mean an order of the Bankruptcy Court in form and substance agreeable to the Parties approving the Settlement Motion (as defined below).

        (ii)     "*Classes 3-7 Cash Distribution Amount*" shall mean cash in the amount of $58,835,333.18.

        (iii)     "*Class 3 Claim*" shall mean a Claim (as defined in the Plan) that has been classified in Class 3 under the Plan.

(iv)     "**Coquina Approval Order**" shall mean an order of the Bankruptcy Court approving the RRA-Coquina Escrow Settlement.

(v)     "**CSR Obligation**" shall mean any actual or possible: (a) collateral source recovery, Collateral Source Recovery (as such term is defined in the Plan, the TD-RRA-Banyon Settlement Agreement, or the Creditor Settlement Agreements), the Recovery CSRs, the Partial Assignment CSRs, or the Remittance Obligations; (b) objection, reconsideration, reduction, recharacterization, subordination, impairment, disallowance, offset or reduction in the distribution payable on or the allowed aggregate amount of a Claim against the RRA Estate; (c) a remittance obligation, payment, assignment, recovery, recoupment or other liability to the RRA Estate, the RRA Trustee, the Liquidating Trust, or the Liquidating Trustee, for any reason whatsoever; or (d) obligation, payment, assignment, recovery, recoupment or other liability to TD Bank on account of the Razorback Partial Assignment; that would in any way affect, directly or indirectly, a Party's receipt of distributions from or require a payment to be made to any of the RRA Estate, the RRA Trustee, the Liquidating Trust, the Liquidating Trustee, or would require a payment to TD Bank pursuant to the Razorback Partial Assignment.

(vi)     "**Final Forfeiture Order**" shall mean the Final Order of Forfeiture entered at docket number 873 in the Forfeiture Proceeding.

(vii)     "**Final Order**" shall mean an order or judgment of the Bankruptcy Court or other court of competent jurisdiction, as entered on its docket, that has not been reversed, stayed, modified or amended, and as to which (a) the time to appeal, petition for certiorari or move for reargument, rehearing or a new trial has expired and no appeal, petition for certiorari or motion for reargument, rehearing or a new trial, respectively, has been timely filed, or (b) any appeal, any petition for certiorari or any motion for reargument, rehearing or a new trial that has been or may be filed has been resolved by the highest court (or any other tribunal having final appellate jurisdiction over the order or judgment) to which the order or judgment was appealed or from which certiorari or reargument, rehearing or a new trial was sought, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing or a new trial shall have expired without such actions having been taken; provided, however, the possibility that a party may file a motion for reconsideration of an order or judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure or Bankruptcy Rules 9023 and 9024, or a motion or objection pursuant to 502(j) of the Bankruptcy Code shall not preclude an order from being a Final Order.

(viii)     "**Forfeiture Claims**" shall mean the allowed non-subordinated claims recognized as valid in the Forfeiture Proceeding.

(ix)     "**Forfeiture Proceeding**" shall mean Case No. 09-60331-CR-COHN now pending in the United States District Court for the Southern District of Florida.

(x)   "**Forfeiture Settlement Order**" shall mean the Order Granting Joint Motion to Approve Settlement entered at docket number 871 in the Forfeiture Proceeding.

(xi)   "**Funds Effective Date**" shall mean the first date on which the Approval Order has become a Final Order, and each of the Liquidating Trustee, Funds and TD Bank have executed this Agreement.

(xii)   "**Liquidating Trustee Releasees**" shall mean, the Liquidating Trustee, the Restitution Receiver, the RRA Trustee, and each of their current and former auditors, accountants, financial advisors, predecessors, successors, servants, employees, consultants, counsel, attorneys, administrators, executors, representatives, and the assigns of each of the foregoing.

(xiii)   "**Restitution Assets**" shall have the meanings set forth in the Final Forfeiture Order.

(xiv)   "**TD Bank Releasees**" shall mean TD Bank, The Toronto-Dominion Bank, and each of their current and former affiliates, officers, directors, principals, shareholders, parents, subsidiaries, members, auditors, accountants, financial advisors, predecessors, successors, servants, employees, consultants, counsel, attorneys, partners, insurers, underwriters, administrators, executors, representatives, the TD Bank Indemnitees, and the assigns of each of the foregoing.

(xv)   "**TD Bank Indemnitees**" shall mean any current or former director, officer or employee of TD Bank or The Toronto-Dominion Bank to whom TD Bank or The Toronto-Dominion Bank owe an indemnification obligation (whether in its by-laws, certificates of incorporation, board resolutions, or by agreement).

(xvi)   An "**Unknown Claim**" is any claim that the holder does not know or suspect to exist in his, her or its favor at the time of giving a release that if known by him, her or it, might have affected his, her or its agreement to settle and release such claims. With respect to a Party that is releasing claims pursuant to this Agreement, such releasing Party expressly waives and is deemed to have waived the provisions, rights and benefits of California Civil Code § 1542 (to the extent it applies herein), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Each Party that is releasing claims pursuant to this Agreement expressly waives and is deemed to have waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable or equivalent in effect to California Civil Code § 1542. The releasing Party may hereafter discover facts in addition to or different from those that any of them now knows or believes to be true with respect to the subject matter of the released claims, but each releasing Party shall expressly have and shall be deemed to have fully, finally and forever settled and released any and all released claims, known or unknown, suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including conduct or omission that is negligent, grossly negligent, reckless, intentional, fraudulent, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery of existence of such different or additional facts. Each releasing Party acknowledges and shall be deemed to have acknowledged that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

2. <u>Treatment of the Funds' Class 3 Claim</u>. Within two (2) business days after the Funds Effective Date, the Liquidating Trustee shall make the full and final distribution on account of the Funds' Class 3 Claim by remitting the sum of $3,700,000 to the Funds and by remitting the sum of $4,000,000 to TD Bank. Upon the occurrence of the Funds Effective Date, the Funds' Class 3 Claim and the distributions on that claim shall not be subject to objection, reconsideration, reduction, recharacterization, subordination, impairment, disallowance, offset or reduction for any reason whatsoever, including without limitation, on account of a CSR Obligation. Upon the occurrence of the Funds Effective Date, no CSR Obligation that arises after May 1, 2015 shall apply in the RRA Case to the Funds.

3. Upon the Settlement Effective Date, the following claims shall be treated as follows:

      a.    <u>Treatment of the Razorback Unsecured Rising Tide Claim</u>. Within two (2) business days after the Settlement Effective Date and subsequent to the making of the payments provided in Paragraph 2 hereof, the Liquidating Trustee shall make the full and final distribution on account of the Razorback Unsecured Rising Tide Claim by remitting the sum of $443,201.20 to the Razorback Claimants. The Razorback Unsecured Rising Tide Claim and the distributions on that claim shall not be subject to objection, reconsideration, reduction, recharacterization, subordination, impairment, disallowance, offset or reduction for any reason whatsoever, including without limitation, on account of a CSR Obligation. The Liquidating Trustee shall make all distributions on account of the Razorback Unsecured Rising Tide Claim to the account set forth on Schedule 1 attached hereto for the benefit of the Razorback Claimants. Conrad & Scherer LLP shall, within ten (10) business days after the Settlement Execution Date, deliver to the Liquidating Trustee a completed

W-9 form and any other documentation required by applicable law to receive the distribution on account of the Razorback Unsecured Rising Tide Claim.

b.     Treatment of the Class 6 Claim. Within three (3) business days after the Settlement Effective Date and subsequent to the making of the payments provided in Paragraphs 2 and 3(a) hereof, the Liquidating Trustee shall make the full and final distribution on account of the Class 6 Claim by remitting the sum of $26,000,000 to TD Bank.  The Class 6 Claim and the distributions on that claim shall not be subject to objection, reconsideration, reduction, recharacterization, subordination, impairment, disallowance, offset or reduction for any reason whatsoever, including without limitation, on account of a CSR Obligation.

c.     Treatment of the Razorback Subordinated Claim. Upon the Settlement Effective Date, the Razorback Subordinated Claim shall be an Allowed Claim (as defined under the Plan) in the aggregate amount of $22,418,125. The maximum distribution on account of the Razorback Subordinated Claim shall be $22,418,125.  Within four (4) business days after the Settlement Effective Date and subsequent to the making of the payments provided in Paragraphs 2, 3(a) and 3(b) hereof, the Liquidating Trustee shall make the full and final distribution on account of the Razorback Subordinated Claim by remitting the sum of $22,418,125 to the Razorback Claimants. The Razorback Subordinated Claim and the distributions on that claim shall not be subject to objection, reconsideration, reduction, recharacterization, subordination, impairment, disallowance, offset or reduction for any reason whatsoever, including without limitation, on account of a CSR Obligation.  The Liquidating Trustee shall make all distributions on account of the Razorback Subordinated Claim to the account set forth on Schedule 1 attached hereto for the benefit of the Razorback Claimants. Conrad & Scherer LLP shall, within ten (10) business days after the Settlement Execution Date,  deliver to the Liquidating Trustee a completed W-9 form and any other documentation required by applicable law to receive the distribution on account of the Razorback Subordinated Claim.

d.     Treatment of the Gibraltar Claim. The Gibraltar Claim shall be an Allowed Claim in the aggregate amount of $7,500,000. Within four (4) business days after the Settlement Effective Date and subsequent to the making of the payments provided in Paragraphs 2, 3(a) and 3(b) hereof, the Liquidating Trustee shall make the full and final distribution on account of the Gibraltar Claim by remitting the sum of $7,500,000 to Gibraltar.

e.     Treatment of the Levy Claim. The Levy Claim shall be an Allowed Claim in the aggregate amount of $1,625,358.14. Within four (4) business days after the Settlement Effective Date and subsequent to the making of the

payments provided in Paragraphs 2, 3(a) and 3(b) hereof, the Liquidating Trustee shall make the full and final distribution on account of the Levy Claim by remitting the sum of $1,625,358.14 to the Levy Claimants. The Liquidating Trustee shall make all distributions on account of the Levy Claim to the account set forth on Schedule 2 attached hereto for the benefit of the Levy Claimants. Moskowitz, Mandell, Salim & Simowitz, P.A. shall, within ten (10) business days after the Settlement Execution Date, deliver to the Liquidating Trustee a completed W-9 form and any other documentation required by applicable law to receive the distribution on account of the Levy Claim.

f.   <u>No CSR Obligations</u>. Upon the occurrence of the Settlement Effective Date, no CSR Obligation that arises after May 1, 2015 shall apply in the RRA Case to any of: the Razorback Parties; the Sochet Entities; TD Bank; and any of their respective Allowed Claims. For the avoidance of doubt, the CSR Obligations that were agreed to by certain of the Razorback Parties pursuant to, without limitation, the Sochet Order and the RRA-Razorback-Concorde-Viceroy Settlement and that have already been applied or that are reflected in the allowed amounts of and distributions to be paid upon the claims as set forth in Paragraphs 3(a) and 3(c) of this Agreement shall not be affected by this Paragraph 3(f).

4.   <u>Stay and Dismissal of Actions</u>.

a.   <u>Stay of Adversary Proceeding</u>. Within two (2) business days after the Settlement Execution Date, the Liquidating Trustee shall file a motion seeking to stay or to hold in abeyance the Adversary Proceeding, subject to the dismissal of the Funds pursuant to Paragraph 4(b)(i) of this Agreement, pending the Settlement Effective Date.

b.   <u>Dismissal of Adversary Proceeding</u>. (i) Upon the occurrence of the Funds Effective Date and the payment in full of the distributions set forth in Paragraph 2 of this Agreement, the Funds shall be deemed dismissed with prejudice from the Adversary Proceeding. (ii) Upon the occurrence of the Settlement Effective Date and the payment in full of the distributions set forth in Paragraphs 2, 3(a), 3(b), 3(c), 3(d) and 3(e) of this Agreement, the Adversary Proceeding shall be deemed dismissed with prejudice.

c.   <u>Stay of Sanctions Appeal</u>. Within two (2) business days after the Settlement Execution Date, the Razorback Parties and TD Bank shall file a joint motion seeking to stay or hold in abeyance the Sanctions Appeal pending the occurrence of the Settlement Effective Date.

d.   <u>Withdrawal and Dismissal of Sanctions Motion and Sanctions Appeal</u>. Within two (2) business days after the Settlement Effective Date, the Razorback Parties shall withdraw and dismiss, with prejudice, or shall file a motion seeking to withdraw and dismiss, with prejudice, the Sanctions

Appeal. Within two (2) business days after the withdrawal and dismissal, with prejudice, of the Sanctions Appeal, the Razorback Parties and TD Bank shall jointly stipulate to or, if necessary, file a joint motion that seeks to (i) withdraw and dismiss, with prejudice, the Sanctions Motion, and (ii) withdraw and dismiss, with prejudice, the TD Motion to Enforce.

5.   Distributions on Account of the Class 8 Claim. Subsequent to the payment in full of the distributions set forth in Paragraphs 2, 3(a), 3(b), 3(c), 3(d) and 3(e) of this Agreement, the Liquidating Trustee shall make distributions on account of the Class 8 Claim in accordance with the Plan, the Confirmation Order (as defined in the Plan) and the Liquidating Trust Agreement (as defined in the Plan) as set forth herein; provided, however that such distributions on account of the Class 8 Claim shall be subject to (i) the retention by the Liquidating Trustee of sufficient funds to administer the Liquidating Trust, and to pay all of its liabilities and obligations permitted by the Plan, the Liquidating Trust Agreement and the Confirmation Order through to the termination of the Liquidating Trust, and (ii) if ordered by Final Order, the payment of such amounts, if any, that are awarded by the Bankruptcy Court, to the Liquidating Trustee, Akerman LLP and/or Berger Singerman LLP, in their respective capacities as counsel to the Liquidating Trustee, in connection with any motion any of them may file seeking a fee enhancement for their work and the results obtained in connection with the Liquidating Trustee's settlements with Coquina Investments and the Forfeiture Proceeding and the settlement obtained in connection therewith. Should the Liquidating Trustee, Akerman LLP and /or Berger Singerman LLP file a motion seeking a fee enhancement, TD Bank reserves all rights to object to any such potential fee enhancement request on any and all grounds. Notwithstanding anything to the contrary in this Agreement, nothing in this Agreement establishes a right to seek a fee enhancement by any entity.

6.   Certain Obligations to TD Bank. Notwithstanding anything else contained in this Agreement (including, without limitation, Paragraphs 2, 7 and 8 of this Agreement), none of the obligations owed to TD Bank arising under the TD-Funds Settlement Agreement shall be or shall be deemed to be released, amended, modified or altered by this Agreement and all such obligations shall remain in full force and effect, including, without limitation, the obligations arising under Section 2.3 of the TD-Funds Settlement Agreement.

7.   Funds Related Mutual Releases. Upon the first calendar day on which each of the Funds Effective Date and the payment in full of the distributions provided for by Paragraph 2 of this Agreement has occurred, TD Bank and the Liquidating Trustee, without the need for the execution and delivery of additional documentation, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Funds from any and all claims, actions, causes of action, liabilities, obligations, rights, suits, accounts, covenants, contracts, agreements, promises, damages, awards, recoveries, judgments, debts, encumbrances, liens, remedies and demands, of any and every kind, character or nature whatsoever, (including, without limitation, Unknown Claims), whether liquidated or unliquidated, asserted or unasserted, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, at equity or otherwise, which TD Bank or the Liquidating Trustee, or anyone claiming through them, may have or claim to have, now or in the future, against the Funds which are based upon, relate to, or arise out of, in connection with or pertain to any of (a)(i) the Adversary Proceeding, (ii) the

11

Rothstein Ponzi, (iii) Scott W. Rothstein and any other co-conspirator or aider and abettor, and (iv) RRA, the RRA Estate, the RRA Trustee, the RRA Liquidating Trust and the Liquidating Trustee (collectively, the subjects referenced in Paragraph 7(a)(i) through Paragraph 7(a)(iv) hereof are referred to as the "**Implicated Matters and Entities**"); (b) any act, fact, transaction, event, occurrence, statement or omission in connection with the Implicated Matters and Entities; and (c) anything alleged or that could have been alleged in the Adversary Proceeding, including, without limitation, any Unknown Claims. Additionally, upon the first calendar day on which each of the Funds Effective Date and the payment in full of the distributions provided for by Paragraph 2 of this Agreement has occurred, the Funds, without the need for the execution and delivery of additional documentation, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged each of the TD Bank Releasees and the Liquidating Trustee Releasees from any and all claims, actions, causes of action, liabilities, obligations, rights, suits, accounts, covenants, contracts, agreements, promises, damages, awards, recoveries, judgments, debts, encumbrances, liens, remedies and demands, of any and every kind, character or nature whatsoever, (including, without limitation, Unknown Claims), whether liquidated or unliquidated, asserted or unasserted, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, at equity or otherwise, which the Funds or anyone claiming through any of them, may have or claim to have, now or in the future, against any of the TD Bank Releasees and the Liquidating Trustee Releasees, which are based upon, relate to, or arise out of, in connection with or pertain to any of (x) the Implicated Matters and Entities; (y) any act, fact, transaction, event, occurrence, statement or omission in connection with the Implicated Matters and Entities; and (z) anything alleged or that could have been alleged in the Adversary Proceeding, including, without limitation, any Unknown Claims. Except as expressly set forth in this Agreement (including, without limitation, as set forth in Paragraphs 2 and 6 of this Agreement), the foregoing releases are not intended to release, nor shall any of them have the effect of releasing or modifying any of the obligations or rights arising pursuant to this Agreement, the Plan, and any other written agreements between or among any of the Parties hereto and any orders approving or establishing such agreements, including without limitation, the TD-RRA-Banyon Settlement Agreement, the TD-Funds Settlement Agreement, the TD-RRA-Levy Settlement Agreement, the Creditor Settlement Agreements, the Razorback-TD Settlement Agreement, or the Sochet Order.

8.  <u>Mutual Releases</u>. Upon the first calendar day on which each of the Settlement Effective Date, the payment in full of the distributions provided for by Paragraphs 2, 3(a), 3(b), 3(c), 3(d) and 3(e) of this Agreement, and the dismissal of the Sanctions Motion and the Sanctions Appeal with prejudice pursuant to Paragraph 4(d) of this Agreement has occurred, TD Bank and the Liquidating Trustee, without the need for the execution and delivery of additional documentation, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged each of the Razorback Parties, Gibraltar and the Levy Parties from any and all claims, actions, causes of action, liabilities, obligations, rights, suits, accounts, covenants, contracts, agreements, promises, damages, awards, recoveries, judgments, debts, encumbrances, liens, remedies and demands, of any and every kind, character or nature whatsoever, (including, without limitation, Unknown Claims), whether liquidated or unliquidated, asserted or unasserted, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, at equity or otherwise, which TD Bank or the Liquidating Trustee, or anyone claiming through them, may have or claim to have, now or in the future, against any of the Razorback Parties, Gibraltar and

the Levy Parties, which are based upon, relate to, or arise out of, in connection with or pertain to any of (a) the Implicated Matters and Entities; (b) any act, fact, transaction, event, occurrence, statement or omission in connection with the Implicated Matters and Entities; (c) with respect to TD Bank only, the Sanctions Motion and the Sanctions Appeal; and (d) anything alleged or that could have been alleged in the Adversary Proceeding, including, without limitation, any Unknown Claims. Additionally, upon the first calendar day on which each of the Settlement Effective Date and the payment in full of the distributions provided for by Paragraphs 2, 3(a), 3(b), 3(c), 3(d) and 3(e) of this Agreement has occurred, each of the Razorback Parties, Gibraltar and the Levy Parties, without the need for the execution and delivery of additional documentation, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged each of the TD Bank Releasees and the Liquidating Trustee Releasees from any and all claims, actions, causes of action, liabilities, obligations, rights, suits, accounts, covenants, contracts, agreements, promises, damages, awards, recoveries, judgments, debts, encumbrances, liens, remedies and demands, of any and every kind, character or nature whatsoever, (including, without limitation, Unknown Claims), whether liquidated or unliquidated, asserted or unasserted, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, at equity or otherwise, which any of the Razorback Parties, Gibraltar and the Levy Parties, or anyone claiming through any of them, may have or claim to have, now or in the future, against any of the TD Bank Releasees and the Liquidating Trustee Releasees, which are based upon, relate to, or arise out of, in connection with or pertain to any of (w) the Implicated Matters and Entities; (x) any act, fact, transaction, event, occurrence, statement or omission in connection with the Implicated Matters and Entities; (y) the Sanctions Motion and the Sanctions Appeal, and (z) anything alleged or that could have been alleged in the Adversary Proceeding, including, without limitation, any Unknown Claims. For the avoidance of doubt, the foregoing releases by each of the Razorback Parties include, but are not limited to, a release of the TD Bank Releasees by each of the Razorback Parties of any and all actions, causes of action, liabilities, obligations, rights, suits, accounts, covenants, contracts, agreements, promises, damages, awards, recoveries, judgments, debts, encumbrances, liens, remedies and demands, of any and every kind, character or nature whatsoever, (including, without limitation, Unknown Claims) that were or could have been alleged by any of the Razorback Parties in, or which are based upon, relate to, or arise out of, in connection with or pertain to the Razorback State Court Suit, the Sanctions Motion, and/or the Sanctions Appeal. Except as expressly set forth in this Agreement (including, without limitation, as set forth in Paragraphs 2 and 3(f) of this Agreement), the foregoing releases are not intended to release, nor shall any of them have the effect of releasing or modifying any of the obligations or rights arising pursuant to this Agreement, the Plan, and any other written agreements between or among any of the Parties hereto and any orders approving or establishing such agreements, including without limitation, the TD-RRA-Banyon Settlement Agreement, the TD-Funds Settlement Agreement, the TD-RRA-Levy Settlement Agreement, the Creditor Settlement Agreements, the Razorback-TD Settlement Agreement, or the Sochet Order.

   9. <u>Liquidating Trustee Reporting and Certificate Requirements</u>.  The Liquidating Trustee and the Restitution Receiver, as applicable, shall:

     a. by the tenth (10th) calendar day of each calendar month subsequent to the Settlement Execution Date, provide to counsel for each of the other Parties by electronic mail at the addresses set forth in Paragraph 17(l) of this

Agreement, a report that contains (i) the current cash balance held by the Liquidating Trust; (ii) the current cash balance held by the Restitution Receiver; (iii) the aggregate amount of the unpaid costs of administration of the Liquidating Trust (including any costs incurred by the Restitution Receiver); (iv) the unpaid Claims classified in Classes 2 and 3 under the Plan (including the Funds' Class 3 Claim) that have not been Disallowed (as defined in the Plan); (v) the aggregate unpaid amount of all valid Forfeiture Claims; and (vi) the aggregate unpaid amount of the Allowed Claims in the RRA Case that are held by claimants who also hold Forfeiture Claims; provided that, upon the payment in full of the distributions set forth in Paragraph 2 of this Agreement, the report required by this Paragraph 9(a) need not be delivered to counsel to the Funds;

b.    within two (2) business days after receipt of Restitution Assets that are sufficient to pay all outstanding unpaid Forfeiture Claims, the Restitution Receiver shall execute and deliver to counsel for each of the other Parties, by electronic mail at the addresses set forth in Paragraph 17(l) of this Agreement, a certificate stating that the Restitution Receiver has assets sufficient to pay all Forfeiture Claims (the "**Forfeiture Funds Receipt Certificate**"); provided that, upon the payment in full of the distributions set forth in Paragraph 2 of this Agreement, the Forfeiture Funds Receipt Certificate need not be delivered to counsel to the Funds;

c.    within two (2) business days after the Restitution Receiver makes distributions that would pay all of the unpaid Forfeiture Claims of all entities that also hold Allowed Class 3 Claims, the Restitution Receiver shall execute and deliver to counsel for each of the other Parties, by electronic mail at the addresses set forth in Paragraph 17(l) of this Agreement, a certificate stating that the Restitution Receiver has paid in full all Forfeiture Claims held by entities that also hold Allowed Class 3 Claims under the Plan (the "**Forfeiture Distribution Certificate**"); provided that, upon the payment in full of the distributions set forth in Paragraph 2 of this Agreement, the Forfeiture Distribution Certificate need not be delivered to counsel to the Funds;

d.    within two (2) business days after (i) the Forfeiture Distribution Certificate has been delivered to the Parties in accordance with Paragraph 9(c), and (ii) the Liquidating Trustee holds a cash amount equal to the Classes 3-7 Cash Distribution Amount, the Liquidating Trustee shall execute and deliver to counsel for each of the other Parties, by electronic mail at the addresses set forth in Paragraph 17(l) of this Agreement, a certificate stating that the Liquidating Trustee holds the Classes 3-7 Cash Distribution Amount (the "**Distribution Amount Certificate**"); provided that, upon the payment in full of the distributions set forth in Paragraph 2 of this Agreement, the Distribution Amount Certificate need not be delivered to counsel to the Funds.

10.     <u>Conditions to Settlement Effective Date</u>. The term "**Settlement Effective Date**" shall mean, and shall occur on, the first business day after the last to occur of all of the following conditions:

  a.  The Approval Order has become a Final Order;

  b.  The Coquina Approval Order has become a Final Order;

  c.  The Restitution Receiver has delivered the Forfeiture Funds Receipt Certificate;

  d.  The Restitution Receiver has delivered the Forfeiture Distribution Certificate;

  e.  The Liquidating Trustee has delivered the Distribution Amount Certificate; and

  f.  Each of the Parties has executed this Agreement;

<u>provided, however,</u> that any and all of the foregoing conditions to the Settlement Effective Date may be waived by the Parties if such waiver is in writing and signed by counsel to each of the Parties, and no additional Bankruptcy Court approval shall be required for any such waiver.

11.     <u>Termination</u>.  This Agreement may be terminated by any of the Parties, at each Party's option and discretion, by written notice by electronic mail to counsel for each of the other Parties at the addresses set forth in Paragraph 17(l) of this Agreement, in the event that the Settlement Effective Date has not occurred on or before August 31, 2015; <u>provided that,</u> upon the payment in full of the distributions set forth in Paragraph 2 of this Agreement, the Funds shall not be permitted to terminate this Agreement.  If this Agreement is terminated pursuant to this Paragraph 11 prior to the payment in full of the distributions set forth in Paragraph 2 of this Agreement, no Party hereto shall have any obligation or liability to any other Party arising from this Agreement; if this Agreement is terminated pursuant to this Paragraph 11 subsequent to the payment in full of the distributions set forth in Paragraph 2 of this Agreement, then no Party hereto shall have any obligation or liability to any other Party arising from this Agreement except that Paragraphs 2, 4(b)(i), 6 and 7 and the rights and obligations thereunder shall survive the termination of this Agreement; <u>provided, however, that</u> nothing in this Paragraph 11 shall relieve a defaulting or breaching Party from any liability or damages arising out of its breach of any provision of this Agreement.

12.     <u>Specific Performance</u>.  Subject to the Approval Order becoming a Final Order, it is understood and agreed by the Parties that money damages would not be a sufficient remedy for any breach of this Agreement by any Party and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief as a remedy of any such breach.

13.     <u>Filing of Motion to Approve Agreement</u>.  Within three (3) business days after the Settlement Execution Date, the Liquidating Trustee shall file a motion in the RRA Case seeking Bankruptcy Court approval of this Agreement (the "**Settlement Motion**").

14. <u>Support of Settlement Motion</u>. Upon the Settlement Execution Date, the Parties shall support, not oppose and not object to the Settlement Motion.

15. <u>Best Efforts Regarding Motion</u>. Upon the Settlement Execution Date, the Parties each agree to use their commercially reasonable best efforts to obtain approval of the Settlement Motion. At all times prior to the termination of this Agreement in accordance with Paragraph 11 hereof, each of the Restitution Receiver and the Liquidating Trustee shall use his commercially reasonable best efforts to cause the Settlement Effective Date to occur as expeditiously as possible.

16. <u>Non-Contravention of Agreement</u>. Upon the Settlement Execution Date, each Party agrees that it shall not take any action, and shall refrain from taking any action, that would delay the occurrence of the Settlement Effective Date, cause the Settlement Effective Date not to occur, that would not be in support of the entry of the Approval Order or otherwise contravene or breach any of the terms or requirements of this Agreement.

17. <u>Miscellaneous</u>.

    a. <u>No Admission of Liability; No Estoppel Effect</u>.

        (i) The execution of this Agreement is not intended to be, nor shall it be construed as, an admission or evidence in any pending or subsequent suit, action, proceeding or dispute of any liability, wrongdoing, or obligation whatsoever (including as to the merits of any claim or defense) by any Party to any other Party or any other entity with respect to any of the matters addressed in this Agreement.

        (ii) None of this Agreement, the settlement or any act performed or document executed pursuant to or in furtherance of this Agreement or the settlement: (I) is or may be deemed to be or may be used as an admission or evidence of the validity of any claim, or of any wrongdoing or liability of any TD Bank Releasee or any Party to this Agreement; or (II) is or may be deemed to be or may be used as an admission or evidence of any liability, fault or omission of any TD Bank Releasee, Liquidating Trustee Releasee or any Party to this Agreement, in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal, other than in an action to enforce the terms of this Agreement. None of this Agreement, the settlement, or any act performed or document executed pursuant to or in furtherance of this Agreement or the settlement shall be admissible in any proceeding for any purposes, except to enforce the terms of this Agreement, and except that any TD Bank Releasee, Liquidating Trustee Releasee or Party to this Agreement may file this Agreement in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on the principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense of counterclaim.

       b.    <u>Good Faith Negotiations</u>.  The Parties further recognize and acknowledge that each of the Parties hereto is represented by counsel, and such Party received independent legal advice with respect to the advisability of entering into this Agreement.  Each of the Parties acknowledges that the negotiations leading up to this Agreement were conducted at arm's length and in good faith; this Agreement is made and executed by and of each Party's own free will; that each knows all of the relevant facts and his or its rights in connection therewith; and that he or it has not been improperly influenced or induced to make this settlement as a result of any act or action on the part of any Party or employee, agent, attorney or representative of any Party to this Agreement.  The Parties further acknowledge that they entered into this Agreement because of their desire to avoid the further expense and inconvenience of litigation and other disputes, and to compromise permanently and settle the claims between the Parties that are settled by the execution of this Agreement.

       c.    <u>Third Party Beneficiaries</u>.  Nothing in this Agreement, express or implied, is intended or shall be construed to confer upon, or to give to, any entity other than the Parties hereto, the TD Bank Releasees, the Liquidating Trustee Releasees, and their respective successors and assigns, any right, remedy or claim under or by reason of this Agreement or any covenant, condition or stipulation thereof, and the covenants, stipulations and agreements contained in this Agreement are and shall be for the sole and exclusive benefit of the Parties hereto, the TD Bank Releasees, the Liquidating Trustee Releasees, and their respective successors and assigns.

       d.    <u>Governing Law; Retention of Jurisdiction; Service of Process</u>.  This Agreement shall be governed by and construed in accordance with the federal law as it pertains to the Bankruptcy Code and administration of estates in bankruptcy, as well as the internal laws of the State of Florida, without giving effect to any principles of conflicts of law. By the execution and delivery of this Agreement, each of the Parties hereby irrevocably and unconditionally agrees that any legal action, suit or proceeding between the Parties with respect to any matter under or arising out of or in connection with this Agreement or for recognition or enforcement of any judgment rendered in any such action, suit or proceeding shall be brought in the Bankruptcy Court and, by execution and delivery of this Agreement, each Party hereby irrevocably accepts and submits itself to the jurisdiction of such court, generally and unconditionally, with respect to any such action, suit or proceeding.  In the event any such action, suit or proceeding is commenced, the Parties hereby agree and consent that service of process may be made, and personal jurisdiction over any Party hereto in any such action, suit or proceeding may be obtained, by service of a copy of the summons, complaint and other pleadings required to commence such action, suit or proceeding upon the Party at the address of such Party set forth in the notice Paragraph of this Agreement, unless another address had been designated by such Party in a notice given to the other Parties in accordance with the notice Paragraph hereof.

       e.    <u>Waivers</u>.  The failure of a Party to require performance of any provision of this Agreement shall in no manner affect its right at a later time to enforce such provision.  No waiver by a Party of any condition or of any breach of any term, covenant, representation or warranty contained in this Agreement shall be effective unless in writing, and no waiver in any one or more instances shall be deemed to be a further or continuing waiver of any such condition

or breach in other instances or a waiver of any other condition or breach of any other term, covenant, representation or warranty.

   f. <u>Interpretation</u>.  Each Party represents that it has been represented by the counsel of its respective choice in connection with the negotiation of the settlement and documentation of this Agreement.  The Parties have participated jointly in the negotiation and drafting of this Agreement.  If an ambiguity or question of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the Parties hereto and no presumption or burden of proof will arise favoring or disfavoring any Party hereto because of the authorship of any provision of this Agreement.

   g. <u>Headings</u>.  The headings of the Sections, Paragraphs and subsections of this Agreement are inserted for convenience only and are not part of this Agreement and do not in any way limit or modify the terms or provisions of this Agreement and shall not affect the interpretation hereof.

   h. <u>Entire Agreement</u>.  This Agreement constitutes the full and entire agreement among the Parties with regard to the subject hereof, and supersedes all prior negotiations, representations, promises or warranties (oral or otherwise) made by any Party with respect to the subject matter hereof.  No Party has entered into this Agreement in reliance on any other Party's prior representation, promise or warranty (oral or otherwise) except for those that may be expressly set forth in this Agreement.

   i. <u>Amendment</u>.  The terms and provisions of this Agreement cannot be amended, modified or supplemented orally or by course of conduct or course of dealing, but only in a writing signed by the Party affected thereby.

   j. <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original copy of this Agreement and all of which, when taken together, shall constitute one and the same Agreement.  Copies of executed counterparts transmitted by telecopy or other electronic transmission service shall be considered original executed counterparts, provided receipt of copies of such counterparts is confirmed.

   k. <u>Further Assurances</u>.  Each of the Parties hereto agrees to execute and deliver, or to cause to be executed and delivered, all such instruments, and to take all such action as the other Parties may reasonably request in order to effectuate the intent and purposes of, and to carry out the terms of, this Agreement.

   l. <u>Notices</u>.  Any notice required or permitted to be provided under this Agreement shall be in writing and served by electronic mail and either (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, freight prepaid, to be addressed as follows:

If to the Liquidating Trustee or
the Restitution Receiver, to:

      Michael I. Goldberg
      Akerman LLP
      350 East Las Olas Boulevard
      Suite 1600
      Fort Lauderdale, FL 33301
      Telephone: (954) 468-2444
      Email: michael.goldberg@akerman.com

      with a copy to:

      Paul Steven Singerman
      Berger Singerman LLP
      1450 Brickell Avenue
      Suite 1900
      Miami, FL 33131
      Telephone: (305) 714-4343
      Email: singerman@bergersingerman.com

If to the Razorback Parties or
Razorback Claimants to:

      William R. Scherer
      Conrad & Scherer, LLP
      633 South Federal Highway
      Fort Lauderdale, FL 33301
      Telephone: (954) 462-5500
      E-mail: WScherer@conradscherer.com

      with a copy to:

      David L. Rosendorf
      Kozyak Tropin & Throckmorton, LLP
      2525 Ponce de Leon Blvd., 9th Floor
      Coral Gables, FL 33134
      Telephone: (305) 372-1800
      E-mail: dlr@kttlaw.com

If to Platinum, to:

>     David Steinberg
>     Platinum Partners
>     250 West 55th Street, 14th Floor
>     New York, NY 10019
>     Telephone: (212) 582-2222
>     Email: dsteinberg@platinumlp.com
>
>     with a copy to:
>
>     Scott L. Baena, Esq.
>     Bilzin Sumberg Baena Price & Axelrod
>     1450 Brickell Avenue, 23rd Floor
>     Miami, FL 33131
>     Telephone: (305) 350-2403
>     Email: sbaena@bilzin.com

If to Level 3, to:

>     Ari Glass
>     Managing Member
>     810 7th Ave
>     Suite 615
>     New York, NY 10019
>     Telephone: (212) 332-2675
>     Email: aglass@bbaymgmt.com

with a copy to:

>     Scott L. Baena, Esq.
>     Bilzin Sumberg Baena Price & Axelrod
>     1450 Brickell Avenue, 23rd Floor
>     Miami, FL 33131
>     Telephone: (305) 350-2403
>     Email: sbaena@bilzin.com

If to TD Bank, to:

>     TD Bank, N.A.
>     Legal Department
>     3000 Atrium Way, 4th Floor
>     Mount Laurel, NJ 08054
>     Attn: David Futterman
>     Telephone: (856) 505-2220
>     E-mail: David.Futterman@td.com

with a copy to:

>Dion W. Hayes
>McGuireWoods LLP
>One James Center
>901 East Cary Street
>Richmond, VA 23219
>Telephone: (804) 775-1144
>Email: dhayes@mcguirewoods.com

If to Gibraltar:

>Gibraltar Private Bank & Trust
>C/O Office of the General Counsel
>55 Alhambra Plaza
>Coral Gables, FL 33134
>legaloperations@gibraltarprivate.com

with a copy to:

>James C. Moon
>Meland Russin & Budwick
>3200 Southeast Financial Center
>200 South Biscayne Boulevard
>Miami, FL 33131
>Telephone: (305) 358-6363
>Email: jmoon@melandrussin.com

If to the Levy Parties:

>William G. Salim, Jr.
>Moskowitz, Mandell, Salim & Simowitz, P.A.
>800 Corporate Drive, Suite 500
>Fort Lauderdale, FL 33334
>Telephone: (954) 491-2000
>Email: wsalim@mmsslaw.com

     m. <u>Assigns</u>. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective estates, heirs, legal representatives, successors and assigns.

     n. <u>Parties' Fees and Costs</u>. The Parties shall bear their own costs (including legal fees) in connection with the negotiation of the settlement and drafting of this Agreement. Each Party agrees to pay all fees, costs and expenses incurred by the prevailing Party, as determined by a court of competent jurisdiction, in connection with the enforcement and litigation of this settlement, including all reasonable related attorneys' fees, court costs and

expert witness fees, whether incurred prior to litigation, during litigation or post-litigation and including bankruptcy, mediation or arbitration proceedings.

18. <u>Representations of the Parties</u>. As of the Settlement Execution Date:

    a.    And as of the date of execution by each Party, each Party, and (if applicable) the counsel executing this Agreement on their behalf, represents and warrants that it is duly authorized to execute this Agreement and that the person through whom each Party executes this Agreement is fully and duly empowered and authorized to execute it on the respective Party's behalf.

    b.    Counsel to the Razorback Claimants represents and warrants that Conrad & Scherer LLP is authorized on behalf of each of the Razorback Claimants to receive any and all distributions paid by the Liquidating Trust to each such claimant under this Agreement.

    c.    Each of the Funds, the Razorback Parties, Gibraltar and the Levy Parties represents and warrants that he/she/it has made written disclosure to the Liquidating Trustee and his counsel of any and all (i) Collateral Source Recoveries (as defined in the Plan and the RRA-Razorback Settlement Agreement) he/she/it has received, and (ii) other amounts that would be required to be disclosed by an entity submitting a Verified Collateral Source Recovery Disclosure (as defined in the Plan). For the avoidance of doubt, the Liquidating Trustee and his counsel acknowledge and agree that the Funds have disclosed to each of them the payments made by TD Bank to the Funds or Regent Capital Partners, LLC, as applicable, pursuant to the TD-Funds Settlement Agreement, consisting of the TD Bank Claim Participation Payment and the TD Bank Funds Settlement Payment, as well as of the TD Bank Funded RRA Payment to the Regent Parties (as such terms are defined in the Complaint for Declaratory Relief filed in the Adversary Proceeding).

    d.    The Liquidating Trustee and TD Bank are aware of and acknowledge that the Razorback Parties are continuing to pursue litigation against and settlement negotiations with other third parties, including without limitation Bank of America, Gersten Savage LLP, other legal professionals, the Gibraltar insurance litigation, and the Banyon crime/fraud insurance litigation, which may result in future Collateral Source Recoveries by the Razorback Parties, either before or after the Settlement Effective Date.

    e.    The Liquidating Trustee and TD Bank are aware of and acknowledge that Shimon Levy, Rachel Levy, Minkowitz, Bar-Adon, and Zion Varon, are continuing to pursue litigation against and settlement negotiations with Bank of America.

**Liquidating Trustee and Restitution Receiver**

Michael I. Goldberg
Date: 6/16/15

**Counsel to the Liquidating Trustee and Restitution Receiver**

By: Paul Steven Singerman
Berger Singerman LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 714-4343
Email: singerman@bergersingerman.com
Date: 6/16/15

**TD Bank, N.A.**

By:
Printed Name:
Title:
Date:

**Counsel to TD Bank, N.A.**

By: Dion W. Hayes & Patrick Hayden
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, VA 23219
Telephone: (804) 775-1144
Email: dhayes@mcguirewoods.com
Date: 6/16/15

**Platinum Partners Value Arbitrage Fund L.P.**

By:
Printed Name:
Title:
Date:

**Platinum Partners Credit Opportunities Fund, L.P.**

By:
Printed Name:
Title:
Date:

**Centurion Structured Growth LLC**

By:
Printed Name:
Title:
Date:

**Level 3 Capital Fund, L.P.**

By:
Printed Name:
Title:
Date:

**Counsel to The Funds**

By: Scott L. Baena, Esq.   + Jay Sakalo
Bilzin Sumberg Baena Price & Axelrod
1450 Brickell Avenue, 23rd Floor
Miami, FL 33131
Telephone: (305)350-2403
Email: sbaena@bilzin.com
Date: 6/16/15

**Gibraltar Private Bank & Trust**

By:
Printed Name:
Title:
Date:

**Liquidating Trustee and Restitution Receiver**

_____
Michael I. Goldberg
Date:_____

**Counsel to the Liquidating Trustee and Restitution Receiver**

_____
By: Paul Steven Singerman
Berger Singerman LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 714-4343
Email: singerman@bergersingerman.com
Date:

**TD Bank, N.A.**

By:_____
Printed Name:_____
Title:_____
Date:_____

**Counsel to TD Bank, N.A.**

_____
By: Dion W. Hayes
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, VA 23219
Telephone: (804) 775-1144
Email: dhayes@mcguirewoods.com
Date:

**Platinum Partners Value Arbitrage Fund L.P.**

By:_____
Printed Name:_____
Title:_____
Date:

**Platinum Partners Credit Opportunities Fund, L.P.**

By:_____
Printed Name:_____
Title:_____
Date:

**Centurion Structured Growth LLC**

By:_____
Printed Name:_____
Title:_____
Date:

**Level 3 Capital Fund, L.P.**

By:_____
Printed Name:_____
Title:_____
Date:

**Counsel to The Funds**

_____
By: Scott L. Baena, Esq.
Bilzin Sumberg Baena Price & Axelrod
1450 Brickell Avenue, 23rd Floor
Miami, FL 33131
Telephone: (305)350-2403
Email: sbaena@bilzin.com
Date:

**Gibraltar Private Bank & Trust**

By:_____
Printed Name: _Michael C. Sontes_
Title: _EVP - General Counsel_
Date: _6/16/15_

23

**Counsel to the Gibraltar Private Bank &
Trust**

By:_____
James C. Moon
Meland Russin & Budwick
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 358-6363
Email: jmoon@melandrussin.com
Date:

**Counsel to The Razorback Claimants
And Razorback Parties**

_____
By: David L. Rosendorf
Kozyak Tropin & Throckmorton, LLP
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Telephone: (305) 372-1800
E-mail: dlr@kttlaw.com
Date:_____

AND

_____
By: William R. Scherer
Conrad & Scherer, LLP
633 South Federal Highway
Fort Lauderdale, FL 33301
Telephone: (954) 462-5500
E-mail: WScherer@conradscherer.com
Date:_____

**Daniel Minkowitz**

_____
Printed Name: Daniel Minkowitz
Date: 6/12/15

**Mordechai Bar–Adon**

_____
Printed Name:_____
Date:

**Ben Zion Varon**

_____
Printed Name:_____
Date:

**Ovadia Levy**

_____
Printed Name:_____
Date:

**The 2009 Ovadia Levy Revocable Trust**

By:_____
Printed Name:_____
Title:_____
Date:

**Renato Watches, Inc. N/K/A DMOL, Inc.**

By:_____
Printed Name: Daniel Minkowitz
Title: Director
Date: 6/12/15

**Sea Club Ocean Resort Hotel, Inc.**

By:_____
Printed Name:_____
Title:_____
Date:

**JUBOT, LLC**

By:_____
Printed Name: Daniel Minkowitz
Title: President
Date: 6/12/15

**Counsel to the Levy Parties**

_____
By: William G. Salim, Jr.
Moskowitz, Mandell, Salim & Simowitz, P.A.
800 Corporate Drive, Suite 500
Fort Lauderdale, FL 33334
Telephone: (954) 491-2000
Email: wsalim@mmsslaw.com
**Date:**

23

**Counsel to the Gibraltar Private Bank & Trust**

By: _____

James C. Moon
Meland Russin & Budwick
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 358-6363
Email: jmoon@melandrussin.com
Date: 6/16/2015

**Counsel to The Razorback Claimants And Razorback Parties**

_____

By: David L. Rosendorf
Kozyak Tropin & Throckmorton, LLP
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Telephone: (305) 372-1800
E-mail: dlr@kttlaw.com
Date:

AND

_____

By: William R. Scherer
Conrad & Scherer, LLP
633 South Federal Highway
Fort Lauderdale, FL 33301
Telephone: (954) 462-5500
E-mail: WScherer@conradscherer.com
Date:

**Daniel Minkowitz**

_____

Printed Name: _____
Date:

**Mordechai Bar–Adon**

_____

Printed Name: _____
Date:

**Ben Zion Varon**

_____

Printed Name: _____
Date:

**Ovadia Levy**

_____

Printed Name: _____
Date:

**The 2009 Ovadia Levy Revocable Trust**

By: _____
Printed Name: _____
Title: _____
Date:

**Renato Watches, Inc. N/K/A DMOL, Inc.**

By: _____
Printed Name: _____
Title: _____
Date:

**Sea Club Ocean Resort Hotel, Inc.**

By: _____
Printed Name: _____
Title: _____
Date:

**JUBOT, LLC**

By: _____
Printed Name: _____
Title: _____
Date:

**Counsel to the Levy Parties**

_____

By: William G. Salim, Jr.
Moskowitz, Mandell, Salim & Simowitz, P.A.
800 Corporate Drive, Suite 500
Fort Lauderdale, FL 33334
Telephone: (954) 491-2000
Email: wsalim@mmsslaw.com
Date:

24

**Counsel to the Gibraltar Private Bank & Trust**

By: _____

James C. Moon
Meland Russin & Budwick
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 358-6363
Email: jmoon@melandrussin.com
Date:

**Counsel to The Razorback Claimants And Razorback Parties**

By: David L. Rosendorf
Kozyak Tropin & Throckmorton, LLP
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Telephone: (305) 372-1800
E-mail: dlr@kttlaw.com
Date:

AND

By: William R. Scherer
Conrad & Scherer, LLP
633 South Federal Highway
Fort Lauderdale, FL 33301
Telephone: (954) 462-5500
E-mail: WScherer@conradscherer.com
Date:

**Daniel Minkowitz**

Printed Name: _____
Date:

**Mordechai Bar–Adon**

Printed Name: Mordechi Bar-Adon
Date: June 15, 2015

**Ben Zion Varon**

Printed Name: BEN ZION VARON
Date: July/16/15

**Ovadia Levy**

Printed Name: Ovadia Levy
Date: June 16 2015

**The 2009 Ovadia Levy Revocable Trust**

By: _____
Printed Name: Ovadia Levy
Title:
Date: June 16 2015

**Renato Watches, Inc. N/K/A DMOL, Inc.**

By: _____
Printed Name:
Title:
Date:

**Sea Club Ocean Resort Hotel, Inc.**

By: S. Levy.
Printed Name: Shimon Levy.
Title: A Preside nt.
Date: June/15/15

**JUBOT, LLC**

By: _____
Printed Name:
Title:
Date:

**Counsel to the Levy Parties**

By: William G. Salim, Jr.
Moskowitz, Mandell, Salim & Simowitz, P.A.
800 Corporate Drive, Suite 500
Fort Lauderdale, FL 33334
Telephone: (954) 491-2000
Email: wsalim@mmsslaw.com
Date:

25

**Counsel to the Gibraltar Private Bank & Trust**

By:_____
James C. Moon
Meland Russin & Budwick
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 358-6363
Email: jmoon@melandrussin.com
Date:

**Counsel to The Razorback Claimants And Razorback Parties**

By: David L. Rosendorf
Kozyak Tropin & Throckmorton, LLP
2525 Ponce de Leon Blvd., 9ᵗʰ Floor
Coral Gables, FL 33134
Telephone: (305) 372-1800
E-mail: dlr@kttlaw.com
Date:

AND

By: William R. Scherer
Conrad & Scherer, LLP
633 South Federal Highway
Fort Lauderdale, FL 33301
Telephone: (954) 462-5500
E-mail: WScherer@conradscherer.com
Date:

**Daniel Minkowitz**

Printed Name: Daniel Minkowitz
Date: 6/12/15

**Mordechai Bar–Adon**

Printed Name:_____
Date:

**Ben Zion Varon**

Printed Name:_____
Date:

**Ovadia Levy**

Printed Name:_____
Date:

**The 2009 Ovadia Levy Revocable Trust**

By:_____
Printed Name:_____
Title:_____
Date:

**Renato Watches, Inc. N/K/A DMOL, Inc.**

By:_____
Printed Name: Daniel Minkowitz
Title: Director
Date: 6/12/15

**Sea Club Ocean Resort Hotel, Inc.**

By:_____
Printed Name:_____
Title:_____
Date:

**JUBOT, LLC**

By:_____
Printed Name: Daniel Minkowitz
Title: Director/President
Date: 6/12/15

**Counsel to the Levy Parties**

By: William G. Salim, Jr.
Moskowitz, Mandell, Salim & Simowitz, P.A.
800 Corporate Drive, Suite 500
Fort Lauderdale, FL 33334
Telephone: (954) 491-2000
Email: wsalim@mmsslaw.com
Date:

23

**Counsel to the Gibraltar Private Bank & Trust**

By:_____
James C. Moon
Meland Russin & Budwick
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 358-6363
Email: jmoon@melandrussin.com
Date:

**Counsel to The Razorback Claimants And Razorback Parties**

_____
By: David L. Rosendorf
Kozyak Tropin & Throckmorton, LLP
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Telephone: (305) 372-1800
E-mail: dlr@kttlaw.com
Date:

AND

_____
By: William R. Scherer
Conrad & Scherer, LLP
633 South Federal Highway
Fort Lauderdale, FL 33301
Telephone: (954) 462-5500
E-mail: WScherer@conradscherer.com
Date:

**Daniel Minkowitz**

Printed Name: Daniel Minkowitz
Date: 6/12/15

**Mordechai Bar–Adon**

_____
Printed Name:_____
Date:

**Ben Zion Varon**

_____
Printed Name:_____
Date:

**Ovadia Levy**

_____
Printed Name:_____
Date:

**The 2009 Ovadia Levy Revocable Trust**

By:_____
Printed Name:_____
Title:_____
Date:

**Renato Watches, Inc. N/K/A DMOL, Inc.**

By:_____
Printed Name: Daniel Minkowitz
Title: Director
Date: 6/12/15

**Sea Club Ocean Resort Hotel, Inc.**

By:_____
Printed Name:_____
Title:_____
Date:

**JUBOT, LLC**

By:_____
Printed Name: Daniel Minkowitz
Title: Vice President
Date: 6/12/15

**Counsel to the Levy Parties**

_____
By: William G. Salim, Jr.
Moskowitz, Mandell, Salim & Simowitz, P.A.
800 Corporate Drive, Suite 500
Fort Lauderdale, FL 33334
Telephone: (954) 491-2000
Email: wsalim@mmsslaw.com
Date:

**Counsel to the Gibraltar Private Bank & Trust**

By:_____
James C. Moon
Meland Russin & Budwick
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 358-6363
Email: jmoon@melandrussin.com
Date:

**Counsel to The Razorback Claimants And Razorback Parties**

_____

By: David L. Rosendorf
Kozyak Tropin & Throckmorton, LLP
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Telephone: (305) 372-1800
E-mail: dlr@kttlaw.com
Date:

AND

_____

By: William R. Scherer
Conrad & Scherer, LLP
633 South Federal Highway
Fort Lauderdale, FL 33301
Telephone: (954) 462-5500
E-mail: WScherer@conradscherer.com
Date:

**Daniel Minkowitz**

_____
Printed Name:_____
Date:

**Mordechai Bar–Adon**

_____
Printed Name:_____
Date:

**Ben Zion Varon**

_____
Printed Name:_____
Date:

**Ovadia Levy**

_____
Printed Name:_____
Date:

**The 2009 Ovadia Levy Revocable Trust**

By:_____
Printed Name:_____
Title:_____
Date:

**Renato Watches, Inc. N/K/A DMOL, Inc.**

By:_____
Printed Name:_____
Title:_____
Date:

**Sea Club Ocean Resort Hotel, Inc.**

By:_____
Printed Name:_____
Title:_____
Date:

**JUBOT, LLC**

By:_____
Printed Name:_____
Title:_____
Date:

**Counsel to the Levy Parties**

_____
By: William G. Salim, Jr.
Moskowitz, Mandell, Salim & Simowitz, P.A.
800 Corporate Drive, Suite 500
Fort Lauderdale, FL 33334
Telephone: (954) 491-2000
Email: wsalim@mmsslaw.com
Date: 6/15/15

24

**Counsel to the Gibraltar Private Bank & Trust**

By:_____

James C. Moon
Meland Russin & Budwick
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 358-6363
Email: jmoon@melandrussin.com
Date:

**Counsel to The Razorback Claimants And Razorback Parties**

By: David L. Rosendorf
Kozyak Tropin & Throckmorton, LLP
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Telephone: (305) 372-1800
E-mail: dlr@kttlaw.com
Date: 6/16/15

AND

By: William R. Scherer
Conrad & Scherer, LLP
633 South Federal Highway
Fort Lauderdale, FL 33301
Telephone: (954) 462-5500
E-mail: WScherer@conradscherer.com
Date: 6/16/15

**Daniel Minkowitz**

Printed Name:_____
Date:

**Mordechai Bar–Adon**

Printed Name:_____
Date:

**Ben Zion Varon**

Printed Name:_____
Date:

**Ovadia Levy**

Printed Name:_____
Date:

**The 2009 Ovadia Levy Revocable Trust**

By:_____
Printed Name:_____
Title:_____
Date:

**Renato Watches, Inc. N/K/A DMOL, Inc.**

By:_____
Printed Name:_____
Title:_____
Date:

**Sea Club Ocean Resort Hotel, Inc.**

By:_____
Printed Name:_____
Title:_____
Date:

**JUBOT, LLC**

By:_____
Printed Name:_____
Title:_____
Date:

**Counsel to the Levy Parties**

By: William G. Salim, Jr.
Moskowitz, Mandell, Salim & Simowitz, P.A.
800 Corporate Drive, Suite 500
Fort Lauderdale, FL 33334
Telephone: (954) 491-2000
Email: wsalim@mmsslaw.com
Date:

**Rachel Levy**

Printed Name: Rachel Levy
Date: June 15, 2015

**Shimon Levy**

Printed Name: Shimon Levy
Date: June/15/15

**RAZORBACK FUNDING, LLC**        Date:  _____

_____
By:_____
(Print Name & Title)

STATE OF FLORIDA              )
                             )ss
COUNTY OF _____     )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by _____.

_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

**D3 CAPITAL CLUB, LLC**        Date:  _____

_____
By:_____
(Print Name & Title)

STATE OF FLORIDA              )
                             )ss
COUNTY OF _____     )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by _____.

_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

**BFMC INVESTMENT, LLC**                    Date: _____

_____
By:_____
(Print Name & Title)

STATE OF FLORIDA                    )
                                    )ss
COUNTY OF _____            )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by
_____.

_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

**LINDA VON ALLMEN, AS TRUSTEE OF**
**THE VON ALLMEN DYNASTY TRUST**            Date: _____

_____
By:_____
(Print Name & Title)

STATE OF FLORIDA                    )
                                    )ss
COUNTY OF _____            )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by
_____.

_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

**D&L PARTNERS, LP**                                    Date: _____

_____
By:_____
(Print Name & Title)

STATE OF FLORIDA                    )
                                    )ss
COUNTY OF _____            )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by
_____.

_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

**DAVID VON ALLMEN, AS TRUSTEE OF**
**THE DAVID VON ALLMEN LIVING TRUST**        Date: _____

_____
By:_____
(Print Name & Title)

STATE OF FLORIDA                    )
                                    )ss
COUNTY OF _____            )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by
_____.

_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

28

**ANN VON ALLMEN, AS TRUSTEE OF**
**THE ANN VON ALLMEN LIVING TRUST**      Date: _____

_____
By:_____
(Print Name & Title)

STATE OF FLORIDA                )
                               )ss
COUNTY OF _____        )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by _____.

_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

**DEAN KRETSCHMAR**                Date: _____

_____
By:_____
(Print Name)

STATE OF FLORIDA                )
                               )ss
COUNTY OF _____        )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by _____.

_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

**COOPER MANAGEMENT**                    Date: _____

_____
By:_____
(Print Name & Title)

STATE OF FLORIDA                    )
                                    )ss
COUNTY OF _____           )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by
_____.

_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

**CARMEN PAVANO, AS TRUSTEE OF**
**THE EXTRA INNING DYNASTY TRUST**          Date: _____

_____
By:_____
(Print Name & Title)

STATE OF FLORIDA                    )
                                    )ss
COUNTY OF _____           )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by
_____.

_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

30

**ADELE MUSSRY**          Date: _____

_____
By:_____
(Print Name)

STATE OF FLORIDA                )
                                               )ss
COUNTY OF _____       )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by
_____.

_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

**JACK MUSSRY**          Date: _____

_____
By:_____
(Print Name)

STATE OF FLORIDA                )
                                               )ss
COUNTY OF _____       )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by
_____.

_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

31

**NASSIM MUSSRY**                    Date: _____


_____
By:_____
(Print Name)

STATE OF FLORIDA                    )
                                    )ss
COUNTY OF _____           )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by
_____.


_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

**MELINA EL-ANI**                   Date: _____


_____
By:_____
(Print Name)

STATE OF FLORIDA                    )
                                    )ss
COUNTY OF _____           )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by
_____.


_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

32

**DANIELLE IZAAC**          Date:  _____

_____
By:_____
(Print Name)

STATE OF FLORIDA                )
                                )ss
COUNTY OF _____        )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by
_____.


_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

**H&N ASSOCIATES**          Date:  _____

_____
By:_____
(Print Name & Title)

STATE OF FLORIDA                )
                                )ss
COUNTY OF _____        )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by
_____.


_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

**ARETZ & ASSOCIATES**                    Date: _____

_____
By:_____
(Print Name & Title)

STATE OF FLORIDA                    )
                                    )ss
COUNTY OF _____           )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by
_____.

_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

**PARK NATIONAL CAPITAL FUNDING, LLC** Date: _____

_____
By:_____
(Print Name & Title)

STATE OF FLORIDA                    )
                                    )ss
COUNTY OF _____           )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by
_____.

_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

34

**PARK NATIONAL MORTGAGE SERVICING, LLC**   Date: _____

_____
By:_____
(Print Name & Title)

STATE OF FLORIDA                )
                               )ss
COUNTY OF _____        )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by _____.

_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

**SCOTT MORGAN**                        Date: _____

_____
By:_____
(Print Name & Title)

STATE OF FLORIDA                )
                               )ss
COUNTY OF _____        )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by _____.

_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

**VICEROY GLOBAL INVESTMENTS, INC.**     Date: _____

_____
By:_____
(Print Name & Title)

STATE OF FLORIDA          )
                            )ss
COUNTY OF _____    )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by
_____.

_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

**CONCORDE CAPITAL, INC.**     Date: _____

_____
By:_____
(Print Name & Title)

STATE OF FLORIDA          )
                            )ss
COUNTY OF _____    )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by
_____.

_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

**IRA SOCHET AS TRUSTEE OF THE**
**IRA SOCHET REVOCABLE INTER VIVOS TRUST**   Date: _____

_____
By:_____
(Print Name & Title)

STATE OF FLORIDA                    )
                                    )ss
COUNTY OF _____            )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by
_____.

_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (____) OR Produced Identification (____)
Type of Identification Produced:_____

**INVESTORS RISK ADVANTAGE, LP**                    Date: _____

_____
By:_____
(Print Name & Title)

STATE OF FLORIDA                    )
                                    )ss
COUNTY OF _____            )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by
_____.

_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (____) OR Produced Identification (____)
Type of Identification Produced:_____

37

**SUSSCO, INC.**                    Date: _____

_____
By:_____
(Print Name & Title)

STATE OF FLORIDA              )
                             )ss
COUNTY OF _____     )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by
_____.

_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (____) OR Produced Identification (____)
Type of Identification Produced:_____

**FLORENCE PALEY AS ADMINISTRATRIX**   Date: _____
**OF THE ESTATE OF EDWARD PALEY**

_____
By:_____
(Print Name)

STATE OF FLORIDA              )
                             )ss
COUNTY OF _____     )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by
_____.

_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (____) OR Produced Identification (____)
Type of Identification Produced:_____

**FLORENCE PALEY**                          Date: _____

_____

By:_____

(Print Name)

STATE OF FLORIDA                )
                                )ss
COUNTY OF _____       )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by _____.

_____

NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

**THE EDWARD AND FLORENCE**
**PALEY FOUNDATION**                        Date: _____

_____

By:_____

(Print Name & Title)

STATE OF FLORIDA                )
                                )ss
COUNTY OF _____       )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by _____.

_____

NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

**STEVEN PALEY**                                Date: _____

_____
By:_____
(Print Name)

STATE OF FLORIDA                )
                                )ss
COUNTY OF _____        )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by _____.


_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

**LAURA PALEY**                                 Date: _____

_____
By:_____
(Print Name)

STATE OF FLORIDA                )
                                )ss
COUNTY OF _____        )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by _____.


_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

**JANE ZARETSKY**                                    Date: _____

_____

By:_____

(Print Name)

STATE OF FLORIDA                    )
                                                        )ss
COUNTY OF _____    )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by
_____.

_____

NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

**STEVEN ZARETSKY, AS TRUSTEE OF**
**THE JANE ZARETSKY DYNASTY TRUST**          Date: _____

_____

By:_____

(Print Name & Title)

STATE OF FLORIDA                    )
                                                        )ss
COUNTY OF _____    )

The foregoing instrument was acknowledged before me this _____ day of _____, 2015, by
_____.

_____

NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (___) OR Produced Identification (___)
Type of Identification Produced:_____

41

**LAWRENCE E. DEKELBAUM**          Date: _____

_____
By:_____
(Print Name & Title)

STATE OF FLORIDA          )
                       )ss
COUNTY OF _____   )

The foregoing instrument was acknowledged before me this \_\_\_\_\_ day of _____, 2015, by _____.


_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (\_\_\_) OR Produced Identification (\_\_\_)
Type of Identification Produced:_____

**SHALOM STRICTLY KOSHER MEATS, INC.**     Date: _____

_____
By:_____
(Print Name & Title)

STATE OF FLORIDA          )
                       )ss
COUNTY OF _____   )

The foregoing instrument was acknowledged before me this \_\_\_\_\_ day of _____, 2015, by _____.


_____
NOTARY PUBLIC, State of Florida
Notary Public Seal:
Personally Known (\_\_\_) OR Produced Identification (\_\_\_)
Type of Identification Produced:_____

42

## Exhibit A

The Razorback Parties are:

| |
|---|
| Razorback Funding, LLC |
| D3 Capital Club, LLC |
| BFMC Investment, LLC |
| Linda Von Allmen, as Trustee of the Von Allmen Dynasty Trust |
| D&L Partners, LP |
| David Von Allmen, as Trustee of the David Von Allmen Living Trust |
| Ann Von Allmen, as Trustee of the Ann Von Allmen Living Trust |
| Dean Kretschmar |
| Cooper Management, LLC |
| Carmen Pavano, as Trustee of the Extra Inning Dynasty Trust |
| Adele Mussry |
| Jack Mussry |
| Nassim Mussry |
| Melina El-Ani |
| Danielle Izaac |
| H&N Associates |
| Aretz Associates |
| Park National Capital Funding, LLC |
| Park National Mortgage Servicing |
| Scott Morgan |
| Viceroy Global Investments, Inc. |
| Concord Capital, Inc. |
| Ira Sochet as Trustee of the Ira Sochet Revocable Inter Vivos Trust |
| Investors Risk Advantage, LP |
| Florence Paley as administratrix of the Estate of Edward Paley |
| Florence Paley |
| The Edward and Florence Paley Foundation |
| Steven Paley |
| Laura Paley |
| Jane Zaretsky |
| Steven Zaretsky as Trustee of The Jane Zaretsky Dynasty Trust |
| Lawrence E. Dekelbaum |
| Sussco, Inc. |
| Shalom Strictly Kosher Meats, Inc. |

43

**SCHEDULE 1**

# Valley National Bank
# Conrad & Scherer, LLP
# Trust Account

## Incoming Wires (Domestic)

**Wire To:**          **Valley National Bank**

                 **ABA: 021201383**

**Credit To:**         **Conrad & Scherer, LLP**
                 **633 South Federal Highway**
                 **Fort Lauderdale, Florida 33301**

                 **Trust Acct. No.:  1113011363**

## Incoming Wires (International – US Dollars)

**Wire To:**          **Wells Fargo Bank**
                 **Swift Code: PNBPUS3NNYC**

**For Credit To:**      **Valley National Bank**
                 **Swift Code: MBNYUS33**

**Final Credit To:**     **Conrad & Scherer, LLP**
                 **633 South Federal Highway**
                 **Fort Lauderdale, Florida 33301**

                 **Trust Acct. No.:  1113011363**

44

## SCHEDULE 2

## INCOMING WIRE TRANSFER INFORMATION FOR
## MOSKOWITZ, MANDELL, SALIM & SIMOWITZ, P.A.
## LEGACY BANK

LEGACY BANK OF FLORIDA
2300 GLADES ROAD, SUITE 140 WEST
BOCA RATON, FL 33431

ABA# 067015999

CREDIT TO:
MOSKOWITZ, MANDELL, SALIM & SIMOWITZ, P.A. TRUST ACCOUNT
800 CORPORATE DRIVE, SUITE 500
FORT LAUDERDALE, FL 33334

ACCOUNT # 0040000952

WITH TELEPHONE CONFIRMATION TO: JOAN EICHSTAEDT
(954) 491-2000

Please feel free to contact branch for assistance:

Dotty Slaughter or Marcy Kabolowsky
Pompano Beach
6825 Powerline Road
Ft. Lauderdale, FL 33309
(954) 984-0965

**EXHIBIT B**
**[PROPOSED ORDER]**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                             CASE NO.:  09-34791-RBR

ROTHSTEIN ROSENFELDT ADLER, P.A.,                  CHAPTER 11

            Debtor.
_____/

**ORDER GRANTING MOTION TO APPROVE SETTLEMENT AGREEMENT
AMONG LIQUIDATING TRUSTEE AND ALL DEFENDANTS IN
_GOLDBERG V. PLATINUM_, 14-1886-RBR**

**THIS CAUSE** came before the Court for hearing upon the *Motion to Approve Settlement Agreement Among Liquidating Trustee and All Defendants in Goldberg v. Platinum*, 14-1886-RBR [ECF No. ____] (the "Motion") filed on June 16, 2015.  The Court, having reviewed the Motion and the Court file, having found that proper notice of the Motion has been given, and having heard the presentations of counsel, finds it appropriate to grant the Motion.  Accordingly, it is –

**ORDERED** as follows:

1.      The Motion is **GRANTED**.

2.      The terms of the Settlement Agreement attached to the Motion as Exhibit A, are

APPROVED and incorporated herein in their entirety

3.      The Court retains jurisdiction to enforce the terms of the Settlement Agreement,

attached to the Motion as Exhibit A.

# # #

Submitted by:
Paul Steven Singerman, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Facsimile:  (305) 714-4340
singerman@bergersingerman.com

Copy furnished to:
Paul Steven Singerman, Esq.
*(Attorney Singerman is directed to serve this Order to all parties of interest and to file a
Certificate of Service.)*

6442239-3